Robert W. CHAPMAN

v.

Captain G. A. REYNOLDS, Superintendent (two cases).

Tony AYERS and Timothy Kipfinger

v.

Captain G. A. REYNOLDS, Superintendent.

Donald Spencer PHILPY

v.

G. A. REYNOLDS, Superintendent, and

Lt. Coles, Asst. Superintendent.

Stanley L. DeMARTINIS

v.

G. A. REYNOLDS, Superintendent.

Civ. A. Nos. 74–C–30–L, 74–C–35–L to 74–C–38–L.

United States District Court,
W. D. Virginia,
Lynchburg Division.

July 12, 1974.

James W. Hopper, Asst. Atty. Gen., Richmond, Va., for respondents.

## OPINION and JUDGMENT

DALTON, District Judge.

The plaintiffs in the above entitled actions, white inmates at the Rustburg Correctional Unit, have filed these civil actions pursuant to the Civil Rights Act, 42 U.S.C. § 1983, alleging that the defendant prison officials have abridged their constitutional rights. The defendants have filed a motion for consolidation, and since these complaints contain common questions of fact and law, it is ordered that they be consolidated for disposition. Defendants have also filed motions for summary judgment and the plaintiffs have responded to these motions. Therefore, these cases are ready for disposition.

The essence of these complaints is that the officials of the correctional unit engage in racially discriminatory practices against the white inmates of the unit. Initially, plaintiffs contends that they are discriminated against in work assignments in that black inmates are placed in preferred positions which receive higher pay while most white inmates are assigned to work with the state highway department. They contend this practice is promoted by defendant Coles who makes the initial recommendations for work assignments to defendant Reynolds, thereby thwarting any attempt by white inmates to obtain preferred positions.

In addition to denying the plaintiffs' allegations, the defendants by affidavits, state that as of May 17, 1974 the inmate population at the unit consists of fifty-seven black inmates and fifty-one white inmates. There are fifteen black and ten white inmates assigned to non-road work assignments. There are twelve inmates assigned to the unit kitchen, two are white and ten are black; a black inmate is assigned to the laundry, a black inmate is assigned to the unit library, a white inmate is presently the unit tailor, a white inmate is assigned to the farm operation; a white inmate is assigned as the clerk to the local offices of the highway department; and, there are seven white inmates and eight black inmates on work release. Such an allocation of jobs among the unit inmates does not indicate a pattern of discrimination favoring black inmates.

In order to substantiate their claims, the plaintiffs have submitted individual incidents of alleged discrimination by the defendants. Robert Chapman asserts that he has never been asked if he desired a preferred position at the unit although he has had only five infractions during a lengthy incarceration, two of which were initiated by defendant Coles. In response, defendants state since Chapman's transfer to the unit on March 16, 1974, he has not attended any of the GED courses offered at the institution and has only worked thirteen days out of a possible thirty-two working days.

Tony Ayers and Timothy Kipfinger submit that since their arrival at the unit two blacks have been assigned to the laundry room and several to the cell-house. Kipfinger states that he requested an assignment in the kitchen and was refused by defendant Coles; yet, on the same day a black inmate was given the position. Defendants reply that Ayers and Kipfinger have been classified on gunman status since their arrival at the unit on Jaunary 16, 1974, and December 12, 1973, respectively. They indicate that this is standard procedure for all newly received inmates who are physically capable of performing road work, and after each inmate has performed in this capacity for a period of time he is considered for trusty status. In addition, defendants disclose that Kipfinger was convicted by the Unit Adjustment Committee of refusing to obey a direct order to report to work on February 12, 1974, and that Ayers was convicted of refusing to obey a direct order to report to work on May 14, 1974.

Donald Philpy alleges that although he has never been charged with a rule infraction and is on trusty status he is still assigned to the road gang. Defendants state that Philpy had been assigned to an inside job at the unit; however, he asked to be removed from this job, as he was tired of working inside and preferred to return to work on the public highways. Upon his return to the road gang, he requested assignment with the "center-line crew." There were no vacancies, however, and defendant Coles informed Philpy that he would be considered for the first vacancy which occurred.

Stanley DeMartinis asserts that he was recommended for work release by the Institutional Classification Committee, however, this recommendation was disapproved by defendant Reynolds. Defendants do not respond specifically to this allegation, but instead submit general denials of discrimination and recount the factors considered in job assignments, i. e., experience, aptitude, health, work habits, and unit adjustment, also denying that race is a factor in selection. Additionally, the ICC Report recommending Mr. DeMartinis for work release contains a notation by defendant Reynolds indicating his disapproval because be doubted the wisdom of the ICC decision.

Plaintiffs also contend that there is discrimination in the working conditions between black and white inmates. They allege white inmates are forced to work when ill and if they refuse are charged with disobeying a direct order. Black inmates, on the other hand, are not subject to direct orders and are permitted to remain in the unit on workdays when they are physically able to work. In support of this contention, plaintiffs Ayers and Kipfinger allege that they both have been given direct orders to work when ill and, in addition, Ayers contends he was punished for attempting to obtain medical care. Although the plaintiffs have replied to defendants' answer and motion for summary judgment, they have failed to further document their allegations. Instead, they rely on their general contentions to refute the affidavits submitted by the defendants. Therein, the defendants deny that any inmate is ordered to work when ill and specify the medical attention available at the unit. Furthermore, their response indicates that plaintiff Kipfinger has been seen at medical call fifteen times since January 15, 1974, and plaintiff

Ayers has been seen on ten occasions since January 17, 1974. Adjustment Committee reports contained in the record establish that Ayers and Kipfinger have each been charged with disobeying a direct order, and on each occasion, they were accorded a hearing before any punishment was imposed.

The final claim of discrimination pertains to the assignment of living quarters, and involves only plaintiff Chapman. He alleges that on the same day he was moved from the trusty side of the unit to the gunman side, a black inmate in the same security status was placed in the trusty side. Defendants do not respond directly to this allegation, but rather outline the general procedure at the unit for assigning living quarters. They state that an effort is made to keep all gunmen on the gun side of the unit and all trusties on the trusty side. If a gunman is received at the unit and there are no beds available on the gun side, the inmate is quartered on the trusty side until a bed is available on the gun side.

■■ After carefully analyzing the allegations of discrimination contained in these several complaints, the court finds that the plaintiffs have failed to establish facts upon which they might be entitled to relief and, therefore, deems it appropriate to grant summary judgment on these issues. Defendants have responded in great detail to plaintiffs' contentions, outlining the procedures and conditions existing at the unit, and supporting their answers with numerous affidavits. Plaintiffs have replied to the responses and, yet, have failed to detail facts verifying their contentions. Where they have supplied facts of specific incidents, the defendants, in almost every incident, have carefully documented their reasons for the action undertaken. A claim of racial discrimination is a grievous charge, which certainly can rise to constitutional dimensions; but absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated.

■ Remaining for consideration are allegations unrelated to the charges of discrimination. Plaintiffs contend that the defendants have impaired their right of access to the courts by denying them legal material and threatening them with retaliation if court action is initiated. Plaintiff Chapman alleges that defendant Coles refused to provide legal materials to him and inmate Cecil Carter and also threatened Carter with retaliation if he filed suit against him. In his affidavit, defendant Coles states that he was approached by Chapman and Carter requesting legal paper and that he explained to them that the supply of legal paper at the unit was exhausted and offered to provide them with other paper including paper from a legal pad, but these offers were refused. Defendant Reynolds, in an affidavit, states that he has discussed with inmate Cecil Carter his relationship with defendant Coles. Inmate Carter advised Reynolds that he had never been threatened by defendant Coles and had never had any problem with him. Defendant Reynolds states that Carter indicated to him that the statements attributed to him by Chapman were fabrications.

Plaintiffs Ayers and Kipfinger allege that they were threatened with retaliation for instituting court action in that they were forced to work when ill and served food containing hair and other foreign objects. Defendants deny these allegations and assert that no inmate is threatened in any way because he institutes court action against the defendants. The only evidence of disciplinary action against either plaintiff for failure to obey an order to work when allegedly ill is an Adjustment Committee determination finding Ayers guilty of failing to obey a direct order on May 14, 1974. The report reveals that on the date in question Ayers had been examined by the unit nurse and found able to work. He was found guilty of the

charge only after receiving a hearing before the Unit Adjustment Committee.

Again, the court finds no factual basis to the plaintiffs' contentions. The allegations are essentially general, and where specific, have been refuted by the defendants' responses in their affidavits. Plaintiffs have had the opportunity to rebut the defendants' replies, but have failed to establish facts which indicate that the defendants have attempted to prevent them from instituting court action.

Plaintiffs have also made general allegations of harassment, mental abuse, unjust accusations of rule violations, refusal of defendants to consider requests for transfer, denial of assistance to white inmates, refusal to adhere to Division guidelines, and incompetence of prison officials. The only factual support they present for these contentions are plaintiff Chapman's complaints regarding convictions by the Unit Adjustment Committee for refusal to obey a direct order to report to work and for being intoxicated; and alleged threats by defendant Coles to Chapman after Chapman had witnessed an alleged attack by prison guards on another inmate. The defendants have submitted affidavits and copies of the committee reports regarding the two incidents cited by plaintiff Chapman. They indicate that Chapman was accorded due process in these proceedings and Chapman has failed to present any evidence that indicates these proceedings were at all irregular or unfair. Regarding the alleged threat, defendant Coles' affidavit indicates that on April 16, 1974, inmate Ronald Hicks was charged with being intoxicated and, consequently, was brought to his office and administered a breathalyzer test. The test indicated that Hicks was intoxicated, furthermore, his eyes were blurry and he could not control his speech. Hicks was informed that he would be placed in detention overnight; however, when he reached the door to the jail section he refused to enter and picked up a chair to use as a weapon. Several officers grabbed him and carried him into the cell. No one struck Hicks, according to defendant Coles.

Shortly after this, Coles received a report that Chapman was also intoxicated. He was brought to defendants' office and administered a breathalyzer test which was positive. In addition, Chapman's speech was impaired and his eyes were dilated. Coles informed him he was going to be charged with being intoxicated and placed in detention for the night. He then asked Chapman if he was going to go to the cell like a man or would he have to be manhandled like Hicks. Chapman stated he would go peacefully.

Once more, the plaintiffs' allegations are insufficient as a matter of law. Although they proffer broad complaints of harassment and unfair treatment, only plaintiff Chapman presents a claim concerning specific incidents of alleged deprivation. However, these incidents have been shown, by defendants' response and affidavits, to involve reasonable actions by prison administrators pursuant to standard prison procedures. No constitutional violation is evident.

Remaining are the allegations concerning matters which have, in essence, been considered by this court earlier this year in a case involving the officials of the Rustburg Correctional Unit. William Marvin Lunsford et al. v. Glenn A. Reynolds, Superintendent, 376 F. Supp. 526 (W.D.Va.1974). Plaintiffs complain that the medical treatment at the unit is inadequate because a doctor is not available at the unit and inmates are not referred to outside physicians. Additionally, they contend that the food at the unit is improperly prepared and is unsanitary in that it contains human hair and foreign objects. Several inmates contend that not enough food is prepared and that the unit has run out of food on several occasions. In addition, they allege inmates are forced to do hard labor without a proper diet causing headaches, dizziness, and nosebleeds. The plaintiffs have also presented general complaints regarding the adequacy of the prison clothing, the unsani-

tary conditions at the unit, the absence of recreational facilities, the working conditions at the unit, and, last, complain that inmates' are not allowed into their dormitories until 8:00 p. m. each evening.

Although many of these allegations are general in nature and concern matters that are not of constitutional significance, the defendants have again responded in detail to each complaint and submitted affidavits verifying their answers. Defendants state that although all inmates physically capable of performing work are expected to do so, any inmate who is incapable need only report to sick call and he will receive medical attention. The defendants assert that the determination as to whether an inmate is able to work is made by the unit medical staff and not by non-medical personnel. Plaintiff Ayers' and Kipfinger's medical records support the defendants' contention that adequate medical care is available since they disclose that Kipfinger has been on medical call fifteen occasions since January 15, 1974 and Ayers has been on medical call on ten occasions since January 17, 1974.

The defendants have also submitted the affidavit of C. C. Linden, food supervisor for the Bureau of Corrections, who is responsible for all food service facilities at the various field units. In his affidavit, Mr. Linden discusses the preparation and content of the food at the field units and states that he and his assistants make regular, unannounced inspections of the units, the latest at Unit # 9 occurring from May 7 to May 12, 1974. In addition, he has submitted a copy of the Unit # 9 menu from May 13 to May 19, 1974, and a copy of the road force lunch menu from May 13 to May 24, 1974. Defendant Reynolds, in an affidavit, states that every inmate has three sets of outer clothing and each week receives a freshly laundered set. At the end of each week, the work clothes are turned into the laundry and the clothes worn the previous week become work clothes. Each inmate is issued two clean sets of underclothing ev-

ery week and receives one pair of shoes which are generally worn for work with most inmates wearing their own shoes at the unit. Each inmate receives one clean sheet and a clean pillow case each week.

P. M. Stewart, institution sanitation director for the Department of Welfare and Institutions, has also submitted an affidavit. Therein he relates that he inspects each unit once each quarter and his last inspection at Rustburg was made on March 1, 1974. In addition to inspecting the unit, he also ate a meal at the institution. Mr. Stewart states that there was no serious sanitation problems existing at the unit. Defendant Reynolds disclosed that the unit is treated by exterminators once a month, and more often if necessary.

Defendant Reynolds states that the following recreational activities are available at the unit: hobby shop for wood work, leather work, and glass work, ping-pong, weight-lifting, cards, games, television, baseball, softball, basketball, and volleyball. In addition, he states that the base pay for an inmate is twenty-five cents a day with a maximum of fifty cents a day in bonus pay. Inmates working on the highway are given frequent breaks during the day, the number and length of the breaks depending on the weather, the type of work, and the work schedule. He also explains that after dinner inmates go to the day room in the basement of the unit and are allowed into the dormitories at 8:00 p. m. They are not permitted into the dormitories prior to this time because there are not enough guards to keep both areas secure, and most inmates like to use the recreational equipment available in the basement.

■ Many of these allegations, as previously noted, even if established, would not be remediable pursuant to § 1983 since they do not attain constitutional significance. Although the court recognizes that each of the matters proffered is of vital concern to the plaintiffs, this court does not have the authority to consider them unless they evi-

dence infringement of paramount federal constitutional rights. Breeden v. Jackson, 457 F.2d 578 (4th Cir. 1972). Those allegations which do relate to matters cognizable under § 1983 fail to establish facts upon which relief might be granted when considered in light of defendants' responses in their affidavits. Consequently, the court finds these final allegations lacking in merit.

For the aforementioned reasons, it is hereby ordered that defendants' motion for summary judgment be granted.

The clerk is directed to send a certified copy of this opinion and judgment to the petitioners and to counsel for respondents.