Stewart B. BROOKS and Mandel
Calvin, Plaintiffs-Appellants,

v.

Richard P. SEITER, Frederick Silber,
Judith Allen and G. Padan,
Defendants-Appellees.

No. 84–3007.

United States Court of Appeals,
Sixth Circuit.

Submitted on Briefs Oct. 3, 1985.

Decided Dec. 30, 1985.

Stewart B. Brooks, pro se.

Mandel Calvin, pro se.

Saundra J. Robinson, Akron, Ohio (Court
Appointed), for plaintiffs-appellants.

Anthony J. Celebrezze, Jr., Atty. Gen.
for Ohio, Columbus, Ohio, Michael A. Mo-
ses, for defendants-appellees.

Before MERRITT and JONES, Circuit
Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Prison inmates Stewart B. Brooks and
Mandel Calvin (prisoners) brought this ac-
tion *pro se* against prison officials of the
State of Ohio (defendants) under 42 U.S.C.

§ 1983. The complaint alleged that the defendants withheld from the prisoners, pursuant to Ohio Administrative Regulation § 5120–9–19, certain pamphlets and magazines to which they held mail-order subscriptions. The challenged regulations permit prison officials to withhold written materials from prisoners only if the materials are "obscene" or "inflammatory." The prisoners contend, *inter alia*, that these actions, undertaken under color of state law, violate their civil rights secured by the first and fourteenth amendments, by operating as an abridgement of free speech or press. The district court granted prisoners' motions to proceed *in forma pauperis*, but dismissed the complaint *sua sponte*, pursuant to 28 U.S.C. § 1915(d), as frivolous. Accordingly, the only issue presented is whether the prisoners' claims, as stated in their complaint, are frivolous. We conclude that the district court's conclusion that the claims are frivolous was error, and therefore reverse.

## I.

Both prisoners are incarcerated in the Southern Ohio State Correctional Facility at Lucasville, Ohio (the prison). They brought suit against the Ohio prison officials[1] responsible for prohibiting them from receiving mail order publications[2] received under the State's "publishers only" rule.[3]

As heretofore stated, the basis for refusing prisoners access to the publications was Ohio Administrative Code § 5120–9–19, a regulation that prohibits inmates from receiving printed materials that are "inflammatory" or "obscene". Inflammatory materials are those which, when present in the institution, "would constitute a clear and present danger to the security or safety of the institution." Ohio Ad.Code § 5120–9–19(D)(2). The regulation also provides that "[n]o publication shall be considered inflammatory solely on the basis of its appeal to a particular ethnic, racial or religious audience."[4] Materials may be found obscene only under the standards enunciated by the United States Supreme Court. Ohio Ad.Code § 5120–9–19(D)(1). The pertinent regulation adopts the test of *Miller v. California*, 413 U.S. 15, 24–25, 93 S.Ct. 2607, 2614–15, 37 L.Ed.2d 419 (1973), and permits the prison officials to withhold as "obscene" only printed material that, taken as a whole: (1) lacks serious literary, artistic, political or scientific value; (2) the average person, applying contemporary community standards, would find appeals to a prurient interest; and (3) depicts or

1. Defendants are Richard Seiter, Director of the Ohio Department of Rehabilitation and Correction (Department); Chaplain Frederick Silber, head of the Department's Publication Screening Committee (PSC) in Columbus; and Judith Allen and G. Padan, the officers in charge of the prison mail room.

2. Brooks was forbidden to possess eight booklets and three catalog order forms, which were enclosed with the booklets. The eight booklets were titled: "Sex, Race and Class"; "From Somewhere in the World"; "The Quest for a True Humanity"; "To Free Assata Shakur and All African Prisoners of War"; "Azania: an information packet"; "The Political Conviction of R. Dhoruba Mooer"; "Violence Against Women"; and "The Illusion of Black Progress." Defendants have not contested the complaint's claim that all of the booklets had been ordered from the Anti-Racism Literature Project by Brooks through his prison account. Appendix 7.

Calvin was denied access to the September, 1983 issue of *Oui* magazine, which likewise apparently arrived pursuant to a mail order. *Id.*

3. Prisoners have not alleged that application of the rule allowing receipt of printed materials only from publishers deprives them of their rights, nor did defendants deny access to the publications on the basis of this rule. *Cf. Bell v. Wolfish*, 441 U.S. 520, 548–51, 99 S.Ct. 1861, 1879–80, 60 L.Ed.2d 447 (1979).

4. In order to restrict a publication as "inflammatory," the screening official must find that it constitutes "[p]rinted material which incites, aids or abets":
   (a) ... criminal activity, such as rioting or illegal drug use.
   (b) ... physical violence against others, including instruction in making, using or converting weapons.
   [or]
   (c) ... escape, such as instruction in picking locks or digging tunnels.

describes in a patently offensive way certain enumerated kinds of conduct.[5]

As to procedure, the regulations require screening of all incoming publications by the prison officials assigned to the mail room. Ohio Ad.Code § 5120–9–19(F). Inmates must be provided with notice of an adverse determination, of their right to review the material personally, and of their right to appeal the decision to the PSC in Columbus. Ohio Ad.Code § 5120–9–19(F)(1). The prisoners do not contend that the procedure established for review of incoming publications does not satisfy procedural due process requirements, or that each step in the procedure was not followed.

The prisoners claim that the regulations were misconstrued, even intentionally misconstrued, in making the determination that the prisoners' printed materials could be prohibited to them. They further contend that, as applied to their materials, the regulations were overbroad in that they lack a rational relationship to a legitimate state interest in prison security. The complaint is not clear as to whether the prisoners contend that, by intentional misapplication of the regulation, they were denied due process, and we do not reach any such claim. They clearly contend, however, that in applying the regulation, their first amendment rights, as made applicable to the states by the fourteenth amendment, were violated.

The district court, however, characterized the prisoners' complaint as merely "a disagreement over the interpretation of the Ohio Administrative Code." It then stated:

"Prison officials should be accorded wide range in deference [sic] in matters involving prison discipline and security. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). This is such a matter. Accordingly, this petition is hereby dismissed. 28 U.S.C. § 1915(d)." [6] Appendix 32–33. Thus the district court erroneously treated the complaint as only alleging a misinterpretation of the regulation, or it determined, without further investigation of the materials prohibited, that their proscription was permitted by the deference allowed to prison authorities, and therefore further judicial review was not required.

## II.

Under the law of this circuit, a district court may dismiss a *pro se* complaint *sua sponte*, prior to service of process and without providing plaintiffs a reasonable opportunity to amend, only if the complaint is "frivolous" within the meaning of 28 U.S.C. § 1915(d). *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir.1985); *Tingler v. Marshall*, 716 F.2d 1109 (6th Cir.1983).

While recognizing that "[f]rivolity, like obscenity, is often difficult to define," *WSM, Inc. v. Tennessee Sales Co.*, 709 F.2d 1084, 1088 (6th Cir.1983),[7] this court has determined that a complaint may be dismissed as frivolous only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir.1985) (*quoting Malone v. Colyer*, 710 F.2d 258, 260–61 (6th Cir.1983)). Because prisoners are proceeding *pro se*,

Ohio Ad.Code § 5120–9–19(D)(2).

5. The conduct whose depiction may be prohibited from distribution to prisoners is: (i) Nudity emphasizing a state of sexual arousal or stimulation; (ii) Nudity emphasizing masturbatory activity; (iii) Portrayal of explicit sexual acts; (iv) Portrayal acts of bestiality; (v) Portrayal of acts of sado-masochism; (vi) Portrayal of an excretory function. Ohio Ad.Code § 5120–9–19(D)(1).

6. Section 1915(d) provides:
(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the alle-

gation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

7. *WSM, Inc.* involved the propriety of sanctions for a frivolous appeal under Fed.R.App.P. 38, rather than the definition of frivolousness under § 1915(d). It has been argued that an issue that was not "frivolous" at the trial level may nevertheless contain little enough merit that it would be "frivolous" on appeal, and therefore that a different standard of frivolousness ought to be applied under each rule. *See* Martineau & Davidson, *Frivolous Appeals in the Federal Courts: The Ways of the Circuits*, 34 Am.U.L. Rev. 603, 649 (1985).

we examine their complaint "anew" on appeal, *Malone v. Colyer*, 710 F.2d at 260, taking its allegations as true, and subjecting them to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). In addition, this court will scrutinize with special care any dismissal of a complaint filed under a civil rights statute. *See, e.g., Westlake v. Lucas*, 537 F.2d at 858; *Azar v. Conley*, 456 F.2d 1382, 1384 n. 1 (6th Cir.1972).

■ Thus, the only question presented for our review is whether, under the generous standards governing *pro se* civil rights complaints, "it appears beyond doubt that the plaintiff[s] can prove no set of facts which would entitle [them] to relief." *Spruytte*, 753 F.2d at 500. Under this standard, we have little difficulty concluding that the district court's dismissal of this complaint represented reversible error.

The Supreme Court has made it clear that prison inmates retain all first amendment rights not incompatible with their status as prisoners, "or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). The Court has recognized that receiving mail from an outside source, an interest in communication shared by prisoners and their correspondents, is such a first amendment right. *Procunier v. Martinez*, 416 U.S. 396, 407–11, 94 S.Ct. 1800, 1808–10, 40 L.Ed.2d 224 (1974). This right is subject to restriction in the interests of prison security, but such restrictions must further legitimate penological objectives, in a manner no more restrictive than necessary. *Id.* at 413–14, 94 S.Ct. at 1811–12.

Accordingly, the Supreme Court has held unconstitutional the censorship of prisoner mail when prison officials censor simply by indulging their "personal prejudices and opinions," while purporting to apply constitutional standards. *Procunier v. Martinez*, 416 U.S. at 415, 94 S.Ct. at 1812. Other courts have agreed that when reviewing officials merely "apply their own personal prejudices for mail censorship," they deprive prisoners of constitutional protection. *Trapnell v. Riggsby*, 622 F.2d 290, 293 (7th Cir.1980). *Accord Pepperling v. Crist*, 678 F.2d 787, 790 (9th Cir. 1982) ("Prison officials have no legitimate governmental interest in imposing their own standards of sexual morality on the inmates.").

The Supreme Court has never expressly held that the "particularized interest in communicating" shared by prisoners and their correspondents extends to mail-ordered publications. In *Pell v. Procunier*, the Court did note that "the First and Fourteenth Amendments also protect the right of the public to receive such information and ideas as are published." 417 U.S. at 832, 94 S.Ct. at 2809 (citations omitted).[8] But the decision in *Procunier v. Martinez* more squarely rested on an analysis of the nature of personal correspondence, and the Court expressly declined to decide any related questions that would be presented by "mass mailings." 416 U.S. at 408 n. 11, 94 S.Ct. at 1809 n. 11.

It is clear, however, that a personal subscription to, or single order of a particular publication more nearly resembles personal correspondence than a mass mailing. Like personal correspondence, a subscription represents the exercise of volition by both sender and recipient. The sender's interest in communicating the ideas in the publication corresponds to the recipient's interest in reading what the sender has to say. These interests are not undercut by the fact that a subscription also represents a commercial transaction. The Supreme Court has held that commercial speech also is protected by the first amendment. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425

---

8. *See also Minarcini v. Strongsville City School District*, 541 F.2d 577, 583 (6th Cir.1976) (citing Supreme Court cases and concluding that they "serve to establish ... the First Amendment right to know" of students regarding library books)

U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

We can perceive no principled basis for distinguishing publications specifically ordered by a prison inmate from letters written to that inmate for purposes of first amendment protection. We note that other courts of appeal have held, *Pepperling v. Crist*, 678 F.2d 787 (9th Cir.1982); *Guajardo v. Estelle*, 580 F.2d 748 (5th Cir.1978), or assumed, *Trapnell v. Riggsby*, 622 F.2d 290 (7th Cir.1980); *St. Claire v. Cuyler*, 634 F.2d 109 (3d Cir.1980) that prisoners possess a first amendment right to receive printed publications by mailorder or subscription.

This principle does not conflict with the Supreme Court's clear pronouncement that "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies that in their judgment are needed to preserve internal order and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). This is but a particularized statement of the general first amendment law that "reasonable 'time, place and manner' regulations [of communicative activity] may be necessary to further significant governmental interests, and are protected." *Pell v. Procunier*, 417 U.S. 817, 826, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974) (citations omitted).

*Bell* teaches that when reviewing liberty-restricting prison practices—practices that might well violate the Constitution if employed by state officials outside the prison—federal courts should defer to the officials' judgments as to whether those practices actually are necessary to prison security. The case certainly does not, however, stand for the proposition that judicial *review* of the constitutionality of the state's practices is an inappropriate function for the federal courts. This court has "square-

ly held that abstention from hearing claims of institutional violations of rights guaranteed by the U.S. Constitution is inappropriate and federal courts must hear constitutional claims." *Hanna v. Toner*, 630 F.2d 442, 444 (6th Cir.1980) (citations omitted).

The important state interest in prison security creates a valid basis for deferring to the rational judgments of prison officials on the necessity of restricting certain constitutional liberties. That same state interest, however, presents no basis whatever for a federal court to abstain from hearing a colorable constitutional claim. Here, the prisoners have plainly alleged that the State has violated their first amendment rights by withholding these materials. We express no view on whether withholding the material in question in fact deprived the prisoners of constitutional protection. We hold only that it does not appear beyond doubt that the prisoners could prove no set of facts which would entitle them to relief.[9]

The judgment of the district court is **VACATED** and the case is **REMANDED** for further proceedings not inconsistent with this opinion.

---

9. Defendants also argue that the case was properly dismissed, because the officials sued were possessed of a qualified official immunity to civil suits. This issue constituted no part of the district court's decision that the claims were frivolous, and thus was no part of the holding below. On remand, if the State continues to press this argument, the district court must consider it in light of our decisions in *King v. Wells*, 760 F.2d 89 (6th Cir.1985), *Spruytte v. Walters*, 753 F.2d 498 (6th Cir.1985), and *Wolfel v. Bates*, 707 F.2d 932 (6th Cir.1983).