Bahaa KALASHO, Plaintiff,

v.

Robert KAPTURE, Defendant.

No. 93–CV–72479–DT.

United States District Court, E.D. Michigan, Southern Division.

Aug. 15, 1994.

---

Bahaa Kalasho, pro se.

Terry L. Norton, Asst. Atty. Gen., Corrections Div., Lansing, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

### I. INTRODUCTION

Plaintiff, Bahaa Kalasho, filed this *pro se* prisoner's civil rights action pursuant to 42 U.S.C. § 1983. This matter is currently before the Court on plaintiff's objections to Magistrate Judge Morgan's Report and Recommendation, wherein Magistrate Judge Morgan recommended that plaintiff's case be dismissed without prejudice based on plaintiff's failure to exhaust administrative remedies.

At the time this action was filed, plaintiff was incarcerated at Standish Maximum Corrections Facility in Standish, Michigan. Plaintiff is now incarcerated at Huron Valley Men's Facility in Yspilanti, Michigan. Defendant is the Warden at the Standish Facility and has been sued in his individual capacity. Plaintiff alleges that defendant violated plaintiff's First and Fourteenth Amendment rights by refusing to deliver third class/bulk rate mail.

This matter was referred to Magistrate Judge Morgan ("MJ") for a report and recommendation ("R & R"). The MJ recommended that plaintiff's action be dismissed without prejudice for failure to exhaust his administrative remedies. Plaintiff has filed objections to the Report and Recommendation; defendant has not. Although this Court will not adopt the recommendation made by the Magistrate Judge based on plaintiff's objections, upon a review this file, for the reasons set forth below, this Court finds that defendant is entitled to summary

judgment and that plaintiff's case must be dismissed.

## II. BACKGROUND

Plaintiff instituted this cause of action against defendant pursuant to 42 U.S.C. § 1983 on the theory that the defendant unconstitutionally interfered with plaintiff's mail. Plaintiff claims he requested a catalog from the "Eastbay Running Store, Inc." ("Eastbay") in May, 1990. Plaintiff alleges that over the past three years various copies of the catalog were sent to him via third class/bulk rate mail. Plaintiff states, however, that he has never received a single copy of the Eastbay catalog, nor any notification from prison officials that it was being withheld.

On April 30, 1993, plaintiff states he brought his complaint concerning the Eastbay catalogs to defendant's attention. Defendant informed plaintiff that it was the policy of the Michigan Department of Corrections ("MDOC"), pursuant to PD–BCF–636.03(N), not to allow prisoners to receive third class/bulk rate mail.

Plaintiff alleges that this denial of third class/bulk rate mail constitutes a violation of his First Amendment right to receive mail, and furthermore, that the MDOC's failure to give notice and/or a hearing constitutes a violation plaintiff's Fourteenth Amendment right to due process of law.

## III. OPINION

### A. Standard of Review

Summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the non-moving party. *Id.* 477 U.S. at 247–49, 106 S.Ct. at 2510.

### B. Exhaustion of remedies

■ Plaintiff objects to the Magistrate Judge's recommendation that this matter be dismissed for failing to exhaust administrative remedies. Plaintiff is correct in that there is generally no exhaustion requirement before a state prisoner may file a civil rights suit under 42 U.S.C. § 1983. Although, federal prisoners suing federal official in a *Bivens*-type action and seeking injunctive relief must exhaust their administrative remedies, *Davis v. Keohane*, 835 F.2d 1147, 1148 (6th Cir.1987) (per curiam), state prisoners bringing a § 1983 civil rights suit against state officials are not bound by such a requirement. Plaintiff is a state prisoner suing a state official, accordingly, plaintiff's action will not be dismissed for failing to exhaust his administrative remedies. *Patsy v. Board of Regents*, 457 U.S. 496, 512, 102 S.Ct. 2557, 2565–66, 73 L.Ed.2d 172 (1982).

■ Although it is not appropriate to dismiss plaintiff's action for failing to exhaust, a district court nevertheless may stay a state prisoner's § 1983 claim for up to ninety days pursuant to 42 U.S.C. § 1997e, in order for a prisoner to exhaust grievance procedures that have been approved by the United States Attorney General. However, as of this date, Michigan's procedures have not been certified. Therefore, plaintiff's action cannot be stayed in order for him to exhaust grievance procedures pursuant to § 1997e.

### C. Analysis

■ Plaintiff claims that he has a constitutional right to receive Eastbay catalogs. Plaintiff further alleges that Michigan Administrative Code Rule 791.6603 supports this claim and that MDOC's prison directive 63.03 is in violation of this right. Rule 791.6603(3), states:

Subject to the limitations of this rule, a prisoner may receive any ... items that are transmitted through the United States postal service ... except a catalog, unless

it is from a vendor that is authorized by the institution.

Rule 791.6603(5)(g) provides that:

(5) A prisoner shall not be allowed to send or receive any item of mail that is or does any of the following:

\* \* \* \* \* \*

(g) Is a threat to the order and security of the institution or the rehabilitation of a prisoner.

Michigan Department of Corrections policy directive PD–BCF–63.03(N)(8) provides that:

(N) Prisoners shall not be allowed to receive the following items or publications as they are considered to be a threat to the order and security of an institution or to the rehabilitation of prisoners:

\* \* \* \* \* \*

(8). Free advertising material, fliers, and other bulk rate mail except that received from a recognized religious organization sent in care of the institutional chaplain.

Plaintiff claims that Eastbay is an Michigan Department of Corrections approved vendor and, pursuant to Rule 791.6603(3), he should be allowed to receive Eastbay catalogs. Plaintiff also maintains that Michigan Department of Correction's policy directive PD–BCF–63.03 directly contravenes Rule 791.6603(3)'s edict by restricting third class/bulk rate mail including catalogs.

An analysis of the relevant regulations do not support plaintiff's position. There is no contradiction between Rule 791.6603(3) and policy directive PD–BCF–63.03.

Rule 791.6603(3) states that "subject to the limitations of this rule" a prisoner may receive a catalog from an approved vendor. The language, "subject to the limitations of this rule," is critical because it indicates that subsection three of Rule 791.6603 is subject to the limitations imposed by other sections of Rule 791.6603.

Rule 791.6603(5)(g) is clearly such a limitation that circumscribes 791.6603(3). Subsection (5)(g) states that a prisoner shall not be allowed to receive any item of mail that is a threat to the order and security of the institution. As noted in policy directive PD–

BCF–63.03, free advertising and other bulk rate mail is prohibited because the MDOC has concluded that such mail is a threat to the order and security of an institution and to the rehabilitation of prisoners.

When read together, Rule 791.6603(3) is limited by subsection (5)(g) (prohibiting mail which is a threat to the order and security of an institution and to the rehabilitation of prisoners), and policy directive PD–BCF 63.03(N) is clearly within the parameters of Rule 791.6603(5)(g). Therefore, this Court does not find a contradiction between Rule 791.6603(3) and PD–BCF–63.03. However, this does not end this Court's inquiry. Although this court does not find that the two regulations are at odds, it still must be determined whether PD–BCF–63.03 is constitutionally permissible.

### D. First Amendment

■ Plaintiff does not lose his First Amendment right to receive mail solely because he is incarcerated. *Procunier v. Martinez,* 416 U.S. 396, 408–10, 94 S.Ct. 1800, 1809, 40 L.Ed.2d 224 (1974). Inmates retain their First Amendment right to receive mail, subject to limitations justified by legitimate penological interests. *Procunier v. Martinez,* 416 U.S. 396, 408–10, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974); *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *Thornburgh v. Abbott,* 490 U.S. 401, 407–409, 109 S.Ct. 1874, 1878–1879, 104 L.Ed.2d 459 (1989). Although an inmate has a First Amendment right to his mail, an inmate's constitutional rights may be diminished by prison regulations that are reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987).

■ In determining whether a challenged regulation is validly related to legitimate penological interests, this Court must balance the prisoner's constitutionally protected right against the state's interest in efficiently operating its prisons. *Brown v. Johnson,* 743 F.2d 408, 411 (6th Cir.1984), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985). Furthermore, federal courts must impart considerable deference to the exper-

tise of state prison officials when reviewing challenged regulations. *Procunier v. Martinez,* 416 U.S. 396, 404–405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974); *Turner v. Safley,* 482 U.S. 78, 84–85, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987).

The Court in *Turner* adopted a reasonableness standard as the guide in reviewing challenged regulations. The Court identified several factors that are relevant in determining the reasonableness of the regulation at issue.

■ First, the government objective underlying the regulation must be legitimate and neutral. *Turner,* 482 U.S. at 89–91, 107 S.Ct. at 2262. In this case, PD–BCF–63.03 is both legitimate and neutral. Defendant states in his supplemental brief that allowing all third class/bulk rate mail could create a tremendous influx of incoming prisoner mail. (Defendant's Supplemental Brief at 8). Such an influx of incoming mail poses the possibility of a serious security threat to the institution. Third class/bulk rate mail typically results in a tremendous amount of mail, thereby presenting the problem to prison officials of insuring that contraband is not smuggled into the prison via the vast amount of third class mail.

In addition to the problem of insuring that each piece of bulk mail does not contain contraband, fire hazard and accumulation of excess property is of continuing concern to prison officials. Any accumulated combustible material in the finite space accorded inmates is an obvious fire hazard and a concern to the safety and security of other inmates, officials, and the institution. Further, accumulated third class/bulk rate mail poses a security problem such that prisoners could conceivably secret contraband materials amongst it, and make cell searches more difficult. This again has implications for the safety of all inmates, officials, and the institution.

It is clear to this Court that the allowance of third class/bulk rate mail to inmates poses legitimate security concerns. The language of policy directive 63.03(N) makes it explicitly clear that third rate/bulk class mail is being restricted because the Department of Corrections considers it to be a threat to the order and security of the institution or to the rehabilitation of the prisoner. *See* PD–BCF–63.03(N). Protecting prison security is a purpose central to all other correction goals. *Thornburgh v. Abbott,* 490 U.S. 401, 413–16, 109 S.Ct. 1874, 1882, 104 L.Ed.2d 459 (1989). As a consequence, the regulation's goal is legitimate, as it relates to legitimate security concerns.

■ Furthermore, the regulation at issue here, PD–BCF–63.03(N)(8), is undeniably neutral. In assessing neutrality it is important to inquire whether prison regulations restricting inmates First Amendment rights operate in a neutral fashion without regard to the content of the expression. *Turner v. Safley,* 482 U.S. 78, 89–91, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987). The policy directive bans *all* bulk rate mail regardless of content, thereby remaining neutral.

■ The second factor in assessing the reasonableness of a prison restriction is whether the inmate has alternative means of exercising his right in issue. *Thornburgh v. Abbott,* 490 U.S. 401, 417–19, 109 S.Ct. 1874, 1884, 104 L.Ed.2d 459 (1989); *Turner v. Safley,* 482 U.S. 78, 89–91, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987). Eastbay catalogs remain available to inmates by way of the prison store, thereby providing one alternative means by which plaintiff could view the Eastbay running shoe catalog.

Also, nothing prevents plaintiff, or any other prisoner, from pre-paying the postage on any catalog and having it mailed first or second class. Although plaintiff states in his affidavit that he has not received one single copy of the Eastbay catalog since requesting it three years ago, a review of plaintiff's prison charge account reveals orders placed to Eastbay on two separate occasions. Therefore, there are other reasonable alternatives available to plaintiff to view the Eastbay catalog.

■ The third factor which this Court must consider is the impact the accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. *Turner v. Safley,* 482 U.S. 78, 90, 107 S.Ct.

2254, 2262, 96 L.Ed.2d 64 (1987); *Thornburgh v. Abbott,* 490 U.S. 401, 418, 109 S.Ct. 1874, 1884, 104 L.Ed.2d 459 (1989). When accommodation of an asserted right will have a significant affect on fellow inmates and prison staff, courts should defer to the informed discretion of correction officials. *Turner v. Safley,* 482 U.S. 78, 90, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987).

In the case at bar, accommodation of the asserted right will have an impact on both inmates and staff. As discussed above, the allowance of unlimited third class/bulk rate mail raises security and safety concerns for both inmates and staff. Furthermore, given the amount of third class/bulk rate junk mail that is generated, prison officials would be quickly overwhelmed in the mechanics of sorting and delivering to each prisoner— possibly vast amounts of—third class/bulk rate mail while ensuring no contraband enters the prison. Moreover, the prison's resources, which are limited, could be significantly reduced in attempting to process the bulk rate mail, thereby decreasing resources (including both time and money) available to process the more important first class mail, including an inmate's legal mail.

■ The final factor to be considered in determining the reasonableness of the prison policy is whether "an inmate ... can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interest." *Turner v. Safley,* 482 U.S. 78, 90, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987). The purpose of this factor is to guard against and prevent an "exaggerated response" on the part of prison administrators. *Id.,* at 90, 107 S.Ct. at 2262. However, "[t]his is not a least restrictive alternative test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.* (internal quotation marks omitted).

It appears to this court that there is not an alternative measure which both could be readily implemented and would not "impose more than a *de minimis* cost on the pursuit of legitimate corrections." *Id.* 482 U.S. at 93, 107 S.Ct. at 2264. In addition, policy directive 63.03(N)(8) does not appear to be an "exaggerated response" to the problem which the directive attempts to address. Moreover, plaintiff has not presented to this Court an alternative that could fully accommodate plaintiff's rights at a *de minimis* cost to the prison's valid penological interests. Therefore, this factor does not provide evidence that the policy directive is unreasonable.[1]

Therefore, based upon an analysis of these factors, this Court concludes that Michigan Department of Correction's policy directive PD–BCF–63.03(N)(8) is reasonably related to legitimate penological security interests, and is not an unconstitutional violation of plaintiff's First Amendment rights. Therefore, plaintiff's First Amendment claim is dismissed.

### E. Immunity

■ Notwithstanding this Court's analysis of plaintiff's First Amendment claim to receive mail, defendant also is entitled to qualified immunity. Officials who perform discretionary functions have qualified immunity from individual liability for damages that have arisen from the exercise of discretionary functions. *Black v. Parke,* 4 F.3d 442, 445–46 (6th Cir.1993). Further, state officials or employees who are sued in their individual capacity are immune from damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

---

1. It must be remembered that plaintiff seeks the right to *personally* receive the Eastbay catalog. Plaintiff is not arguing that a copy of this catalog (or any third class/bulk rate catalog which is banned by the policy directive) should be made available at the prison's store or in the prison's library. If this Court were to rule in plaintiff's favor, then every inmate in the Michigan prison system would have a constitutional right to receive advertising catalogs sent via third class/ bulk rate postage. Such a large influx of mail would have more than a *de minimis* cost on the prison.

■ Here, plaintiff has sued defendant in his individual capacity. Plaintiff prays only for monetary relief.[2] Plaintiff cites to another § 1983 claim brought by a prisoner in the Western District of Michigan which supports his claim that he is entitled to receive third class/bulk rate mail. *See Mithrandir v. Brown, et al.,* Case No 2:91–CV–006, (W.D.Mich., March 24, 1992) (Hillman, J.).[3] However, that decision is not binding on this Court, and for the reasons discussed above this Court respectfully disagrees with the decision reached by the District Court for the Western District of Michigan. Thus, plaintiff has failed to point to any binding precedent that his right to receive third class/bulk rate mail is a clearly established constitutional right of which a reasonable person would have known.

Therefore, plaintiff is unable to overcome defendant's assertion of qualified immunity and his First Amendment claim is dismissed on this ground as well.

### F. Fourteenth Amendment

Plaintiff alleges that he has been denied procedural due process by not being informed that his Eastbay catalogs were being intercepted. However, in order to successfully argue that procedural due process rights have been abridged, it must first be established that plaintiff has a protected interest in receiving the rejected catalogs. In order to have a protected interest, the plaintiff must have a legitimate claim of entitlement to it. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Although the Sixth Circuit Court of Appeals ruled in *Spruytte v. Walters,* 753 F.2d 498 (6th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986), that Michigan Administrative Code Rule 791.6603(3) did create a protected interest, the Rule subsequently was amended so it would overcome the problem cited in *Spruytte* and thus the amended Rule, even under *Spruytte*'s reasoning, does not create a protected interest. In addition, recent cases from the Supreme Court and the Sixth Circuit, which are discussed below, indicate that the Sixth Circuit's construction of Rule 791.6603(3) in *Spruytte,* is no longer valid.

■ To determine whether a state-enacted rule has created a protected interest, the crucial inquiry is whether substantive limitations have been placed on the discretion of a state official. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 461–64, 109 S.Ct. 1904, 1909–10, 104 L.Ed.2d 506 (1989). The discretion of a state official is restrained by a rule only if it contains unmistakably mandatory language such as "shall" or "will." *Parate v. Isibor,* 868 F.2d 821, 832 (6th Cir. 1989); *Washington v. Starke,* 855 F.2d 346, 349 (6th Cir.1988). Absent mandatory language in the rule, a plaintiff cannot assert a legitimate claim of entitlement to the interest. *Parate,* 868 F.2d at 832.

■ The administrative rule that the plaintiff relies on is permissive, not mandatory, in nature. Rule 791.6603(3) provides that, *"Subject to the limitations of this rule,* a prisoner *may* receive any printed, typed, or handwritten items that are transmitted through the United States postal service . . .

**2.** Plaintiff also sought permanent injunctive relief barring defendant from not delivering the Eastbay catalog to plaintiff. However, as noted above, plaintiff is no longer an inmate at Standish, where defendant is the warden. Therefore, plaintiff's request for injunctive relief is MOOT. Plaintiff is no longer under the control of defendant.

**3.** *See also McKaye v. Brown,* 1991 U.S.Dist. LEXIS 968 (W.D.Mich. Jan. 29, 1991) (denying defendant's motion for summary judgment on plaintiff's first amendment claim where the third class/bulk rate mail came from an authorized vender, but granting defendant's motion for summary judgment with respect to materials from an unauthorized vendor), *aff'd without published opinion,* 949 F.2d 397 (6th Cir.1991). It must be noted, however, that only the plaintiff appealed in *McKaye* and the Sixth Circuit merely upheld the grant of summary judgment to defendant on some of plaintiff's claims. The issue of whether the denial of summary judgment with respect to authorized vendors was proper was not before the court; *Wright v. Toombs,* Case No. G89–50641 (W.D.Mich. July 16, 1990) (Bell, J.) (awarding plaintiff $50.00 and permanent injunctive relief where prison officials withheld a third class/bulk rate newspaper).

[emphasis added]." The presence of the word "may" and the caveat that the section is "subject to the limitations of this rule," makes it clear to this Court that the regulation does not serve to limit defendant's authority to prohibit the introduction of publications into the prison.

Therefore, no liberty interest has been created and plaintiff cannot assert a claim that he has been deprived of a protected interest without due process of law. *Board of Pardons v. Allen,* 482 U.S. 369, 377–381, 107 S.Ct. 2415, 2420–22, 96 L.Ed.2d 303 (1987); *Canterino v. Wilson,* 869 F.2d 948, 952–54 (6th Cir.1989). Thus, plaintiff's Fourteenth Amendment claim is dismissed.

## IV. CONCLUSION

For all of the aforementioned reasons, this Court respectfully declines to adopt the Report and Recommendation filed in this matter and IT IS HEREBY ORDERED that defendant's Motion for Summary Judgment is GRANTED. Judgment shall enter accordingly.

IT IS SO ORDERED.

## *JUDGMENT*

IT IS HEREBY ORDERED AND ADJUDGED that this action is DISMISSED pursuant to the Opinion and Order dated August 18, 1994.

Dated at Detroit, Michigan, this 18th day of August, 1994.