Donald W. MINIKEN, Plaintiff,

v.

Kay WALTER, and David
Buss, Defendants.

No. CS–96–407–JLQ.

United States District Court,
E.D. Washington.

Aug. 26, 1997.

Michael W. Gendler, Bricklin & Gendler, Seattle, WA, for Plaintiff.

Donald W. Miniken, Airway Heights, WA, pro se.

Colleen B. Evans, Atty. Gen., Martin E. Wyckoff, Atty Gen., Olympia, WA, for Defendants.

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

QUACKENBUSH, Senior District Judge.

**BEFORE THE COURT** are the parties' Cross–Motions for Summary Judgment, heard without oral argument on August 20, 1997. Michael W. Gendler appeared on behalf of the Plaintiff. Colleen B. Evans appeared on behalf of the Defendants. Having reviewed the record, and being fully advised in this matter, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendants' Motion for Summary Judgment is **DENIED** for the following reasons.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Donald Miniken is a prisoner incarcerated at the Airway Heights Correction Center (AHCC). He filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that the Defendants have violated his First and Fourteenth Amendment rights by failing to deliver a publication he subscribed to entitled "Prison Legal News," without any notice of mail rejection, although he had been receiving it while he was incarcerated at the Washington State Penitentiary (WSP). The Complaint seeks declaratory and injunctive relief, as well as damages and attorney fees. Defendant Kay Walter is the Superintendent of the Airway Heights Correction Center and David Buss is the mail room sergeant at that institution.

Plaintiff filed this complaint **pro se**, along with a Motion for a temporary restraining order and/or preliminary injunction. Subsequently Mr. Gendler appeared on behalf of the Plaintiff, and it was determined that this matter should be resolved by way of summary judgment. The following facts are undisputed:

AHCC has a comprehensive mail regulation, AHCC Field Instruction 450.100, which states in part that "bulk mail will not be delivered." The institution treats the publication called Prison Legal News as "bulk mail." Defendants refuse to deliver Plaintiff's subscription of Prison Legal News claiming that it is "bulk mail," destroy it, and when an issue is destroyed, no notice of rejection is sent to either the publisher or the subscriber. Plaintiff has been unable to obtain Prison Legal News since his transfer to AHCC, although he has paid for the publication with postage stamps, and did receive the publication when he was incarcerated at the Washington State Penitentiary (WSP).

Prison Legal News is published by a nonprofit organization. Copies of the publication provided to the court indicate that it is a newsletter setting forth developments, summaries, and results of prisoner legal actions across the country, as well as articles concerning common prisoner complaints. As a nonprofit organization, the publication is mailed via third class non-profit mail, now called "standard mail" by the post office. Each issue is individually addressed to the prisoner subscribers and includes their proper address, name of commitment, and DOC number, as required by Field Instruction 450.100.

The publisher of Prison Legal News complies with postal service regulations to send the publication to its subscribers. The publication was previously sent by third class mail pursuant to the Postal Service's Domestic Mail Manual. Prison Legal News is currently sent as "standard mail" pursuant to current Postal Service regulations.

The Washington Department of Corrections does not have a statewide policy or definition for "bulk mail" or for publications such as Prison Legal News. A letter dated November 8, 1995 from Tom Rolfs, Director Division of Prisons to Rollin Wright, the publisher of Prison Legal News states that the Washington State Penitentiary allows inmates to receive free publications sent via bulk mail provided it has been approved in advance, and does not otherwise violate DOC Field Instruction 450.100. A letter dated October 21, 1996 from Jim Blodgett, Deputy Director Division of Prisons to Rollin Wright states that "Prison Legal News is not being allowed for inmates at WSP whose subscriptions did not originate from their account at WSP, and that no rejection notice is issued to the sender or intended receiver of mail sent via standard class third or fourth class with no endorsement." Although a statewide policy banning "bulk mail" was proposed to go into effect on January 15, 1997, no such statewide policy was issued. Various correctional facilities across the State vary greatly in their "bulk mail" policies.

AHCC Field Instruction 450.100 sets forth the institution's mail policies, and regulations. The Field Instruction is a detailed 21 page document setting forth in detail the policies and applicable definitions. Item 2 lists 21 different justifications for rejecting incoming prisoner mail. Item 4 states that the Superintendent or designee may limit the number or volume of publications an inmate may receive or retain in his quarters for fire, sanitation or housekeeping reasons. Item No. 5 provides that "bulk mail will not be

delivered." Item 6 provides that "mail determined to be undeliverable will be left unopened and returned to the sender." Item F 1. provides that if any portion of an inmate's incoming or outgoing mail is restricted for the reasons set forth in this Field Instruction, written notification will be provided to the inmate and the sender by the Mail Room staff. Item F 2 provides that the inmate and the sender shall be advised in writing of the right to seek a review of any decision to restrict mail.

At the time this lawsuit was filed, AHCC Field Instruction 450.100 defined "bulk mail" as **"mail which is sent without endorsement (i.e. address correction requested,** forwarding, postage guaranteed, etc.) as classified by the United States Postal Service." (emphasis added). Prison Legal News bears the endorsement "address correction requested."

Defendants have changed the definition of "bulk mail" twice after this lawsuit was filed. First, the AHCC field instruction was changed to define bulk mail as "[m]ail which is sent without endorsement (*return* postage guaranteed), as classified by the United States Postal Service." Page 8 of the Field Instruction, as amended, effective April 7, 1997, reads "[b]ulk mail will not be delivered (exception—only bulk mail that has return postage guarantee)." Then deciding that this was a mistake, Superintendent Walter issued an Administrative Bulletin dated April 21, 1997, defining bulk mail as "[m]ail which is clearly marked "non-profit" or bulk mail."

No notice was given to either the Plaintiff or the sender concerning the rejection and destruction of Prisoner Legal News. Because there are no disputed material facts, this case is appropriately resolved by way of summary judgment.

### 42 U.S.C. § 1983

■ 42 U.S.C. § 1983 requires a claimant to prove (1) that a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *Leer v. Murphy* 844 F.2d 628, 632–33 (9th Cir. 1988). A person deprives another of a constitutional right, if he does an affirmative act,

participates in another's affirmative acts, or omits to perform an act which he is legally required to do under the Constitution that causes the deprivation of which the Plaintiff complains. *Redman v. County of San Diego,* 942 F.2d 1435, 1439 (9th Cir.1991), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992). There is no dispute here that Defendants were acting under color of State law, and that they are responsible for the acts of which Plaintiff complains.

■ The Plaintiff's claim concerns Defendants' alleged unconstitutional application of AHCC Field Instruction 450.100. Statutes (and regulations) may be challenged on two grounds (1) either facially or (2) as applied. *Compassion in Dying v. State of Washington,* 79 F.3d 790, 842 (9th Cir.1996), *rev'd on other grounds,* —— U.S. ——, 117 S.Ct. 37, 135 L.Ed.2d 1128 (1996).

■ Mr. Miniken does not challenge the facial validity of AHCC Field Instruction 450.100's ban against bulk mail, but rather contends that the prohibition against bulk mail has been unconstitutionally applied to his subscription of Prison Legal News. The practical effect of holding a statute unconstitutional as applied is to prevent its future application in a similar context but not to render it utterly inoperative. *Id.* The issue here is whether the prohibition against "bulk mail" unconstitutionally includes the prohibition of subscription publications from non profit organizations such as Prison Legal News.

### FIRST AMENDMENT CLAIM

The Supreme Court has recognized that the First Amendment plays an important, albeit somewhat limited, role in the prison context. In *Procunier v. Martinez,* 416 U.S. 396, 406, 94 S.Ct. 1800, 1808, 40 L.Ed.2d 224 (1974), the Court considered the proper standard of review for prison regulations that restrict inmates' freedom of speech. The Court specifically limited its consideration to regulations of "direct personal correspondence between inmates and those who have a particularized interest in communicating with them," *Id.* at 408, 94 S.Ct. at 1809, as opposed to "mass mailings," for which "differ-

ent considerations may come into play." *Id.* at 408 n. 11, 94 S.Ct. at 1809.

The Court found that censorship of inmate mail—whether the inmate writes or receives it—"works a consequential restriction on the First and Fourteenth Amendment rights of those who are not prisoners." *Id.* at 409, 94 S.Ct. at 1809. The Court held that censorship of prisoner mail is justified if, first, "the regulation or practice in question ... further[s] an important or substantial governmental interest unrelated to the suppression of expression." *Id.* at 413, 94 S.Ct. at 1811. Second, restrictions of First Amendment free speech must be "no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.* 424, 94 S.Ct. at 1816. The Court further held that "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Id.* at 417, 94 S.Ct. at 1814. The Court upheld the district court's requirements of notice to the inmate, the opportunity for the author to protest, and review by someone other than the initial decision-maker. *Id.* at 418–19, 94 S.Ct. at 1814.

In *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), the Court held that a prohibition against bulk mailings by a prisoner's union was reasonable, given the availability of alternative means to share the information. *Id.* at 130–31, 97 S.Ct. at 2540–41. ("First Amendment speech rights are barely implicated in this case" because only bulk mailings were at issue, not "mail rights" themselves).

*Jones* is not controlling in this case for two reasons: First, this case does not concern bulk mailings, but rather the sending of a publication to those who have specifically subscribed to it. Second, the *Jones* Court simply held that the prisoners' loss of the ability to save money by using bulk mail did not implicate the First Amendment. In this case, the Plaintiff is completely precluded from receiving the publication to which he has subscribed and paid for.

The Supreme Court subsequently clarified the standard to be applied when addressing the constitutionality of prison rules in *Turner*

*v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. at 2261. The Court specifically rejected the application of strict scrutiny, in deference to the judgments of prison administrators faced with difficult problems. *Id.*

Prison regulations alleged to infringe constitutional rights are judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 2404–05, 96 L.Ed.2d 282 (1987); *Anderson v. Angelone,* 123 F.3d 1197(9th Cir.1997). Prison regulations are thus upheld if they are "reasonably related to legitimate penological interests." *Id.; Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987). Relevant factors in determining the reasonableness of a restriction include: (1) the connection between the regulation and a legitimate neutral government purpose, (2) the existence of alternative means of exercising the right, (3) the impact accommodation of the right would have on guards, other inmates, and prison resources, and (4) the absence of ready alternatives to the regulation. *Id.* at 89–91, 107 S.Ct. at 2261–63.

In 1989, the Supreme Court held that the *Turner* reasonableness standard must be applied to publications in the prison context and rejected the *Martinez* least restrictive means test in that context. *Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989). At issue were federal regulations that allowed federal prisoners to subscribe to publications, but allowed prison authorities to reject publications deemed harmful to security, order, or discipline. *Id.* at 404, 109 S.Ct. at 1876. The Court noted that the regulations provided procedural protection, including notice to both the sender and the intended recipient and independent review. *Id.* at 406, 109 S.Ct. at 1877–78.

The Defendants contend that the prohibition of delivery of "bulk mail" is reasonably

connected to a legitimate, neutral government purpose and that delivery of all bulk mail delivered to the institution would work a great hardship on prison personnel and resources. However, the constitutionality of the prohibition against delivery of "bulk mail" is not the issue before this court. Rather, the issue is whether the definition of "bulk mail" at AHCC unconstitutionally includes subscriptions from nonprofit organizations such as Prison Legal News.

### 1. Prison Legal News is Not Bulk Mail

■ It is clear that Prison Legal News does not fall within the definition of "bulk mail" prior to post lawsuit changes in the definition contained in AHCC Field Instruction 450.100 because it does carry an endorsement. In fact it carries one of the specified examples of endorsement "Address Correction Requested." It is also clear that once Defendants realized the definition did not cover Prison Legal News, they twice changed the definition of "bulk mail" until it covered Prison Legal News as a non-profit publication. The contention that the three examples "address correction requested," "forwarding," "postage guaranteed" in the former definition were meant to be examples of "bulk mail" rather than examples of endorsements belies credibility.

The court is reminded of Lewis Carroll's classic advice on the construction of language: "When I use a word," Humpty Dumpty said in rather a scornful tone, "it means just what I chose it to mean." *Through the Looking Glass, in the Complete Works of Lewis Carroll* 196 (1939). This advice has been noted on several occasions by the Supreme Court. *See Tennessee Valley Authority v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). No reasonable person could possibly interpret the words of the definition of bulk mail as mail sent without endorsement to include mail sent with the endorsement "address correction requested."

Defendant Superintendent Walter testified during deposition that the "bulk mail" prohibition is intended to prohibit third class mail sent without an endorsement, and that the policy is intended to treat differently "bulk mail sent with an endorsement and bulk mail sent without endorsement, the difference being the endorsement issue." James Blodgett, the Deputy Director of the Division of Prisons, also recognized the significance of endorsements. He stated that "standard class without an endorsement will not be processed into the facility." Therefore, it is obvious that the original definition of "bulk mail" did not cover the subscription to Prison Legal News mailed with the endorsement "address correction requested." The fact that the Defendants changed the definition to cover the claim in this case after it was filed does not change this finding.

### 2. There is No Connection to Legitimate Neutral Purpose

Defendants contend that allowing all bulk mail would create a tremendous influx of incoming prisoner mail, presenting problems to the prison officials, in that allowing bulk mail would double the workload of mailroom personnel, and that by allowing bulk mail inmates would solicit catalogs and flyers, and that names would be sold on mailing lists, so that the volume of mail would be impossible to process. However, the issue is not whether the ban against "bulk mail" is a legitimate regulation, but rather whether subscription publications published by a nonprofit organization such as Prison Legal News are reasonably classified as "bulk mail."

The court is satisfied that the Defendants have set forth a valid rational connection between the ban on mass mailing types of truly bulk mail, such as unsolicited catalogs addressed to "current occupant" and a legitimate neutral purpose, but as previously noted, that is not the issue. The cases cited by the Defendants deal with exactly this type of bulk mail. Both *Sheets v. Moore,* 97 F.3d 164 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1261, 137 L.Ed.2d 339 (1997) and *Kalasho v. Kapture,* 868 F.Supp. 882 (E.D.Mich.1994), involved mass mailed catalogs. However, Defendants have set forth no rational connection between the prohibition of non profit paid subscription publications such as Prison Legal News and any legitimate neutral penological purpose.

The court agrees with Plaintiff that cases such as *Brooks v. Seiter,* 779 F.2d 1177 (6th Cir.1985), and *Montcalm Publishing Co. v. Beck,* 80 F.3d 105 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 296, 136 L.Ed.2d 215 (1996) are more to the point. Although both courts upheld prison regulations prohibiting delivery of "bulk mail," both noted that a personal subscription of a particular publication more nearly resembles personal correspondence than a mass mailing.

> Like personal correspondence, a subscription represents the exercise of volition by both sender and recipient. The sender's interest in communicating the ideas in the publication corresponds to the recipient's interest in reading what the sender has to say . . .
>
> We can perceive no principled basis for distinguishing publications specifically ordered by a prison inmate from letters written to that inmate for purposes of first amendment protection . . . .

*Brooks, supra,* 779 F.2d at 1180.

*Brooks* was decided prior to *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), and used the least restrictive analysis of *Martinez,* which the Supreme Court expressly rejected in *Abbott* as it applies to incoming prisoner publications. *See also, Pepperling v. Crist,* 678 F.2d 787 (9th Cir. 1982), decided prior to these Supreme Court cases, where the Ninth Circuit stated that the blanket prohibition against receipt of a publication by any prisoner carries a heavy presumption of unconstitutionality.

However, even after the Supreme Court rejection of the *Martinez* least restrictive test in favor of the *Abbott* reasonableness test, courts have recognized a stronger first amendment right of prisoners to receive a subscription publication, than any right to a mass mailing. In *Montcalm Publishing Corp. v. Beck, supra,* 80 F.3d 105, the court stated:

> The Supreme Court has clearly recognized a First Amendment interest in those who wish to communicate with prison inmates, although it has expressly reserved the question of how that interest operates in the case of "mass mailings." We do not believe, however, that mass mailings are at issue. Although Montcalm mails Gallery to thousands of subscribers nationwide, this case involves only the relationship between Montcalm and particular inmate-subscribers. Despite the First Amendment's somewhat limited reach in the prison context, it cannot fairly be said that Montcalm has no First Amendment interest at stake.

*Id.* at 109. "In contrast, a publisher who wished to send a particular publication to each and every inmate at a given institution could be said to be undertaking a mass mailing." Id. 109 n. 2. Here it is undisputed that there are no more than 8 to 20 subscribers to Prison Legal News at the AHCC.

Defendants have set forth no rational connection between banning the delivery of subscription publications from a nonprofit organization such as Prison Legal News and any legitimate penologcial purpose. Defendant Buss contends that such mail takes an inordinate amount of time to ensure it gets to the subscriber because it often does not reflect a complete address. However, under the AHCC mail regulation, mail that does not bear a complete address is already excluded from delivery to the inmates. Additionally, it is not disputed that the issues of Prison Legal News addressed to the Plaintiff had complete addresses, including his proper address, committed name, and DOC number.

Moreover, the latest change to the AHCC Field Instruction 450.100 definition of "bulk mail" has changed the definition from a neutral one to a definition that discriminates against nonprofit publications.

The court finds that the prohibition of delivery of subscription publications from nonprofit organizations as "bulk mail" is not reasonably related to a legitimate neutral prison objective.

### 3. No Reasonable Alternative Means for Plaintiff

Defendants contend that the Plaintiff has a reasonable alternative means in that he can have the publisher send him Prison Legal

News by way of first or second class mail. However, this is no alternative because the publisher of Prison Legal News states that the publication is printed and mailed third class by a printer, and that the entire non-profit operation is centered on mailing the publication third class as an economic and logistical matter. There is no way subscribers such as Mr. Miniken can force the publisher to spend more money to send the publication by first or second class mail.

#### 4. No Effect on Prison Personnel or Resources

As before, Defendants have established that allowing delivery of all mass mailing true bulk mail at the prison would have a significant impact on mailroom personnel and other prison officials. However, there is no evidence that the delivery of 8 to 20 fully and correctly addressed copies of Prison Legal News to subscribing inmates at AHCC would have a significant impact on any prison personnel or resources. Defendant Buss has stated that delivery of a properly addressed copy of a subscription publication takes no longer than delivery of a piece of first class mail.

#### 5. Ready Alternatives Are Available to Defendants

AHCC Field Instruction 450.100 allows prison officials to deny inmates access to certain written publications, including those that have not been received in accordance with the specified procedure, or when their content may be detrimental to the security, good order or discipline of the institution; or if a publication contains threats of physical harm, violence or terrorist activities, multiple copies of anything, and for numerous other reasons specified in 21 listed reasons for mail rejection. Additionally, under Field Instruction 450.100 item 4, "The Superintendent . . . may limit the number, or volume of, publications an inmate may receive or retain in his quarters for fire, sanitation or housekeeping reasons." Therefore, the court finds that the prison has readily available alternatives to the prison to the total prohibition of subscription non-profit publications such as Pris-

on Legal News to alleviate Defendants' concerns.

The court concludes that although the prohibition against delivery of bulk mail to inmates may not be unconstitutional, without a finding either way, Plaintiff's First Amendment right to receive his personal subscription to Prison Legal News has been violated.

### DUE PROCESS CLAIM

Plaintiff also alleges that his due process rights under the Fourteenth Amendment were violated because the prison officials did not give him or the publisher any notice of the rejection of Prison Legal News, or any right to independent review. The Supreme Court has clearly established that any restriction of prisoner mail must be accompanied by procedural protections. *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). The Court in *Abbott* Court did not reject that finding, and in fact explicitly pointed out that the regulations at issue in that case established procedural protection, including providing the publisher or sender of rejected publications a copy of the rejection letter and allowing the publisher to obtain independent review of the decision.

Additionally, AHCC Field Instruction 450.100 provides for these very same procedural protections. Section F of the Field Instruction provides that if any portion of an inmate's incoming or outgoing mail is restricted for the reasons set forth in the Field Instruction, written notification will be provided to the inmate and the sender, including the reason for the rejection and advising them of their rights to seek a review of the decision to restrict the mail.

Defendant Buss filed an affidavit in this case stating that "bulk mail is junk mail" not entitled to any process at AHCC. He later recanted his testimony that "bulk mail" is always "junk mail." However, Defendants continue to claim that no process is due for bulk mail. AHCC Field Instruction 450.100 clearly provide for notice and opportunity to be heard for all mail rejected under the Field Instruction. In any event, having found that Prison Legal News is not "bulk mail," the court finds that Plaintiff's due process rights

under the Fourteenth Amendment have also been violated by Defendants' failure to notify either the Plaintiff or the publisher of Prison Legal News of its rejection.

## QUALIFIED IMMUNITY

Defendants contend that even if Plaintiff's constitutional rights were violated by prohibiting the delivery of Prison Legal News, they are immune from liability for damages.

■ A state official is entitled to qualified immunity to the extent that his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In determining whether an official is entitled to qualified immunity, the court must consider (1) whether the Plaintiff has identified a specific constitutional right that has been allegedly violated, (2) whether that right was so clearly established as to alert a reasonable official to its parameters, and (3) whether a reasonable officer could have believed his or her conduct was lawful. *Newell v. Sauser,* 79 F.3d 115, 117 (9th Cir.1996).

■ The Plaintiff bears the initial burden of proving that the right was clearly established. *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Further, the right asserted must be "clearly established at the time of the challenged action." *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). Under this test, the Plaintiff must "offer more than general conclusory allegations" that the Defendants violated a constitutional right. *Backlund v. Barnhart,* 778 F.2d 1386, 1389 (9th Cir.1985). Thus, to support a judgment, the Plaintiff "must show that the particular facts of his case support a claim of clearly established right." *Id.*

■ However, the absence of any authority directly on point is not fatal to a section 1983 claim. A right is clearly established if the only reasonable conclusion from binding authority was that the disputed right existed. *Sweaney v. Ada County, Idaho,* 119 F.3d 1385 (9th Cir.1997); *Blueford v. Prunty,* 108 F.3d 251, 255 (9th Cir.1997).

"This is not to say that an official action is protected by qualified immunity unless the very action has previously been held unlawful, but it is to say that in light of the pre-existing law, the unlawfulness must be apparent." *Anderson v. Creighton, supra,* 483 U.S. at 640, 107 S.Ct. at 3039.

■ The court agrees with Defendants that it was not clearly established that a prohibition against "bulk mail" violated a prisoner's constitutional rights. However, it was clearly established law held that the *Turner* reasonableness standard for prison regulations that infringe on the prisoners' First Amendment rights must be applied to publications since the Supreme Court so held in 1989. *Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989). Therefore, no reasonable prison official could have believed that an absolute prohibition of a paid-for subscription, without any reasonable connection to a legitimate, neutral prison policy, did not violate a prisoner's First Amendment rights.

It was also clearly established law since the 1974 *Procunier v. Martinez* case that rejection of mail sent to a prisoner must meet procedural due process requirements. No reasonable prison official could have believed that destroying a paid-for subscription mailed to a prison inmate without any notice to anyone was constitutional.

For the foregoing reasons, the court concludes that Plaintiff's Motion for Summary Judgment must be and is **GRANTED** and Defendants' Motion for Summary Judgment is **DENIED.** The Court is satisfied that Plaintiff is entitled to declaratory and injunctive relief as well as damages. However, neither party has addressed what would be an appropriate damage award.

## IT IS FURTHER ORDERED:

1. Defendants are **HEREBY PERMANENTLY ENJOINED** from prohibiting de-

livery of an inmate's paid-for subscription to a profit or nonprofit publication based only on the fact that it is mailed to the inmate by "standard mail." This injunction in no way prohibits Defendants from prohibiting mass mailings or other truly "bulk mail" that are mailed to the institution by "standard mail."

2. On or before September 12, 1997 the parties shall serve and file any statement concerning an appropriate damage award. Plaintiff is also entitled to recover his reasonable attorney fees. On or before September 12, 1997, counsel for Plaintiff shall serve and file a statement setting forth the hours expended and the reasonable fee per hour to litigate this case. Defendants shall serve and file any objections on or before September 19, 1997. The court will then direct entry of a Final Judgment including an appropriate award of damages and a reasonable award of attorney fees.

**IT IS SO ORDERED.** The Clerk is directed to enter this Opinion and Order and forward a copy to counsel.