**Donald A. HODGES, Plaintiff,**

v.

**COMMONWEALTH OF VIRGINIA, et al., Defendants.**

**Michael G. FLORA, Plaintiffs,**

v.

**COMMONWEALTH OF VIRGINIA, et al., Defendants.**

**MONTCALM PUBLISHING CORP., Plaintiff–Intervenor,**

v.

**Edward W. MURRAY, et al., Defendants.**

Civ. Nos. 92–0696–R, 92–0907–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Dec. 19, 1994.

Michael Glynn Flora, pro se.

Daniel Robert Bieger, Copeland, Molinary & Bieger, P.C., Abingdon, VA, Keith S. Orenstein, New York City, for Montcalm Pub. Corp.

Karen Lebo, Office of Atty. Gen., Richmond, VA, for Com. of Virginia, Mr. Beck, J. Phippin.

Mark Ralph Davis, Office of Atty. Gen., Richmond, VA, for Edward W. Murray, in his official capacity as Director of Dept. of Corrections of Com. of Virginia (VDOC), John Does 1–7, in their official capacities, such fictitious names being designed to identify those VDOC employees whose true identities are now unknown to plaintiff-intervenor, but who serve as (1) members of the VDOC Publication Review Committee, (2) Warden or Superintendent of Keen Mountain Correctional Center (KMCC), and (3) functional KMCC mailroom censor, R.J. Beck, J. Horton, R.A. Young, E.C. Morris, Ms. Summers.

Donald Arlis Hodges, pro se.

### MEMORANDUM OPINION

WILSON, District Judge.

This is a disposition of two actions filed separately under 42 U.S.C. § 1983 by plaintiffs, Donald A. Hodges and Michael G. Flora, who assert that Keene Mountain Correctional Center's ("KMCC") publication policy, which restricts inmate access to sexually ex-

plicit publications, infringes upon their First Amendment rights. Hodges and Flora named the Commonwealth of Virginia and individual employees at the KMCC as defendants.[1] Montcalm Publishing Corporation ("Montcalm"), owner and publisher of *Gallery* magazine, the publication that was denied to Hodges and Flora under the challenged policy, intervened in both actions as an additional plaintiff. Montcalm further named Edward W. Murray, director of the Virginia Department of Corrections ("VDOC"), and John Does 1–7, unknown VDOC employees, as defendants.

Pursuant to 28 U.S.C. § 636, the United States Magistrate Judge conducted a joint evidentiary hearing of the complaints lodged by Hodges and Flora. In a thoughtful report, the magistrate judge found that KMCC's publication policy was substantively constitutional, on its face and as applied. However, the magistrate judge found that the publication policy, which requires notification to an inmate when a publication addressed to him is denied entry into the prison but does not require notification to the publisher sending the material, failed to provide the necessary procedural safeguards to publishers such as Montcalm. The magistrate judge concluded that the publication policy was substantively reasonable, but procedurally defective, and she recommended that judgement be entered accordingly. The magistrate judge further recommended that injunctive relief be granted requiring the VDOC to provide procedural safeguards as outlined in her report.

The matter is now before this court on objections to the magistrate judge's report by plaintiffs and defendants. The court finds that KMCC's publication policy does not infringe upon the constitutional rights and protections of plaintiffs. As such, the court will adopt the magistrate judge's recommended findings of fact and conclusions of law in regards to the substantive constitutionality of KMCC's publication policy. Contrary to the magistrate judge's recommendation, however, the court finds that the policy satisfies the requirements of procedural due process.

## I.

Donald Arlis Hodges and Michael Glynn Flora are inmates at KMCC located in Keene Mountain, Virginia. Hodges and Flora both subscribe to *Gallery* magazine, a publication which contains sexually explicit writings and nude photos of women posing alone in various settings. Inmates held in Virginia prisons are allowed access to publications of their choice subject to limited prison regulations.

In June of 1992, KMCC personnel inspected the June issue of *Gallery* and, suspecting that the publication violated Department Operating Procedure ("DOP") 852,[2] forwarded it to the Publication Review Committee ("PRC") of the Virginia Department of Corrections in Richmond, Virginia.[3] Upon re-

---

1. Hodges named R.J. Beck, J. Horton, R.A. Young, E.C. Morris, and Ms. Summers. Flora named M. Beck and J. Phippin.

2. This regulation provides that:

   The Warden/Superintendent, or his designee, will disapprove a publication for receipt and possession by an inmate on grounds of obscenity if:
   1. The publication depicts or describes sexual conduct in such a way to include, either:
      a. Representation or descriptions of actual sexual intercourse, normal or perverted, anal or oral; or,
      b. Representations or descriptions of excretion in the context of sexual activity or lewd exhibitions of uncovered genitals in the context of masturbation or other sexual activity; and
   2. A reasonable person viewing the depiction or representation would find that the materi-

al taken as a whole appeals to a prurient interest in sex.
   Department Operating Procedure 852 VII.D [hereinafter DOP 852].

3. KMCC follows certain procedures when a publication possibly violative of DOP 852 enters the institution. The postal clerks conduct an initial inspection of the publication. If it appears to be prohibited under DOP 852, the publication is forwarded to the warden or his designee, who conducts a second inspection. If the warden determines that the issue violates DOP 852, the inmate subscriber is notified of the name of the publication, the issue, and the page numbers of concern. The publication is then sent to the PRC in Richmond, Virginia, which makes a final determination regarding the violative nature of the publication. If the PRC finds that the publication complies with DOP 852, it is returned to KMCC and delivered to the subscriber inmate. If the PRC concludes that the publication violates

view of *Gallery*'s June issue, the PRC determined that the written material violated DOP 852 and disapproved its delivery to Hodges and Flora.[4] KMCC delivered the July 1992 issue of *Gallery* to Hodges and Flora without objection. However, it forwarded the August 1992 issue to the PRC for review, which then approved the issue for dissemination.[5] Beginning with the September 1992 issue of *Gallery,* the PRC has consistently disapproved the magazine for delivery to inmates.

Hodges filed a complaint pursuant to 42 U.S.C. § 1983 alleging that KMCC's application of DOP 852 violated his constitutional rights. Several months later, Flora filed a similar action under § 1983 challenging the constitutionality of DOP 852. Montcalm intervened in both suits as an interested plaintiff. The magistrate judge conducted a joint evidentiary hearing of the cases and issued a report and recommendation. The matter is now before this court on objections to the magistrate's report and recommendation by the plaintiffs and the defendants.

## II.

In her report and recommendation, the magistrate judge first analyzed whether DOP 852 infringes upon the plaintiffs' First Amendment rights, either on its face or as applied. Reiterating the standard articulated by the Supreme Court in *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), the magistrate judge stated that prison regulations which restrict publications delivered to inmates must be "reasonably related to legitimate penological interests." (Mag.Rep. & Rec. at 28, May 5,

1994.) In determining whether the standard had been met, the following factors, set forth in *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987), guided the magistrate judge's analysis:

1. Whether the regulation is neutral and reasonably related to a legitimate governmental interest;

2. Whether alternative means are available to the inmate to exercise the asserted right in question;

3. Whether accommodating that right will have a significant ripple effect on fellow inmates, prison staff and prison personnel; and

4. Whether the alternatives available suggest that the status quo is actually an exaggerated response to prison concerns.

The magistrate judge concluded that DOP 852 *is* reasonably related to a legitimate governmental interest. The articulated penological interests at stake, including security, discipline, order, public safety, and rehabilitation, were found to be legitimate. Giving deference to the testimony of Edward C. Morris, Deputy Director of the VDOC, who stated that publications which violate DOP 852 "significantly hinder inmate rehabilitation," the magistrate judge found that the regulation was reasonably related to a valid governmental interest.[6] (Mag.Rep. & Rec. at 14–15.) It was further concluded that DOP 852 is neutral because it is objective and unambiguous, and its distinctions are based on the potential impact the publica-

---

DOP 852, the publication is returned to the KMCC and the subscriber inmate determines whether the publication be destroyed or sent elsewhere. Over time, the PRC creates a "Disapproved Publications List" which instructs prison personnel of those publications violative of DOP 852 and which should be barred.

4. KMCC personnel had forwarded *Gallery*'s February, March, April, and May 1992 issues to the PRC for review. The PRC approved each publication, apparently on the basis of its pictorial content only—the KMCC personnel had not flagged the written material for review.

5. Since the initiation of this suit, the PRC has examined the July 1992 issue, reexamined the

August 1992 issue, and concluded that both issues violate DOP 852.

6. In her conclusions of law, the magistrate judge stated that "[a] lack of empirical evidence substantiating a causal connection between excluding *Gallery* publications and security, order or successful rehabilitation is not necessary." (Mag. Rep. & Rec. at 29.) Although the double negative in this sentence changes it to mean that empirical evidence is indeed necessary in order to establish a causal connection, the magistrate judge concluded that a sufficient causal connection exists and she did not mention the empirical evidence relied upon. As such, the court suspects that the double negative is a grammatical error and will treat it as such.

tions may have on legitimate penological interests. (Mag.Rep. & Rec. at 29.)

Turning to the second factor, the magistrate judge found that alternative means of exercising the First Amendment right *were* available to Virginia inmates because DOP 852 does not deprive inmates of all sexually explicit publications. (Mag.Rep. & Rec. at 30.) However, in a footnote, the magistrate judge expressly reserved the question of whether the VDOC could ban all sexually explicit material. (Mag.Rep. & Rec. at 18, n. 17.) Under the third factor, it was found that accommodation of the plaintiffs' First Amendment rights would adversely affect the rehabilitation process—specifically, a significant negative ripple effect would occur within the prison in the form of increased bartering. (Mag.Rep. & Rec. at 19.) Last, the magistrate judge concluded that no less intrusive alternatives were readily available to the VDOC in preservation of its penological interests. (Mag. Rep. & Rec. at 19–20.)

The magistrate judge then considered the constitutionality of DOP 852 as applied. Rejecting the argument that DOP 852 is applied in an arbitrary and capricious manner, the court attributed the few inconsistencies in the approval of *Gallery* for dissemination as forgivable imperfections in the VDOC's system of review. In sum, the magistrate judge found that DOP 852 does not violate the plaintiffs' First Amendment rights, either substantively or as applied.

Plaintiffs Hodges and Flora object to the portion of the magistrate judge's report and recommendation detailed above. They have lodged specific objections to numerous findings—both factual and legal. After review of the report and recommendation, however,

this court finds that the magistrate judge conducted a proper analysis of the plaintiffs' First Amendment rights. As such, it will adopt the magistrate judge's report with several modifications.

■■■ As stated previously, a prison regulation that restricts the delivery of publications to inmates must be reasonably related to a legitimate penological interest. The interests articulated by the VDOC, security, discipline, order, public safety, and rehabilitation, need no defense. The more compelling question here is whether sexually explicit publications have a negative impact on those interests. In her report and recommendation, the magistrate judge acknowledged such a causal connection based upon the assertions of the VDOC's Deputy Director, which merit deference, and she held that empirical evidence need not necessarily establish that connection. This court agrees. However, the magistrate judge's failure to rely upon empirical evidence regarding this issue should not be read to mean that none exists.[7] Neither is this issue one of first impression. Other courts have found that sexually explicit publications negatively impact valid penological interests.[8] These considerations further support the connection between DOP 852 and KMCC's interests.

### III.

■■■ The magistrate judge next analyzed whether the plaintiffs, Hodges, Flora, and Montcalm, were afforded procedural due process when KMCC withheld *Gallery* from dissemination. In her report and recommendation, the magistrate judge concluded that DOP 852 does not adequately protect the

---

7. Indeed, studies have been published which show such correlations. *See* Sheila J. Winkelman, *Making a Woman's Safety More Important Than Peep Shows: A Review of the Pornography Victims' Compensation Act,* 44 WASH.U.J.URB. & CONTEMP.L. 237 (1993) (finding empirical support of a connection between sexually explicit publications and violence in 1986 ATT'Y GEN. COMM'N ON PORNOGRAPHY FINAL REP. and other studies). *But see* George C. Thomas, III., *A Critique of the Anti–Pornography Syllogism,* 52 MD.L.REV. 122 (1993) (concluding that the link between pornography and rape is conjectural).

8. *See Dawson v. Scurr,* 986 F.2d 257, 261 (8th Cir.1993) (finding a "rational connection" between the penological interests of security and rehabilitation and the restriction of certain sexually explicit publications), *cert. denied,* —— U.S. ——, 114 S.Ct. 232, 126 L.Ed.2d 187 (1993); *Thompson v. Patteson,* 985 F.2d 202, 206 (5th Cir.1993) (finding that pornographic materials could exacerbate problems of nonconsensual homosexual acts within the prison); *Harper v. Wallingford,* 877 F.2d 728, 733 (9th Cir.1989) (stating that an organizational bulletin of the North American Man/Boy Association could encourage violence within the prison and undermine rehabilitation).

interests of publishers, such as Montcalm, because it fails to require notification of a publisher whose publication is denied entry into the prison.[9] (Mag.Rep. & Rec. at 25.) The magistrate judge stated that minimum safeguards include notice to the publisher, an opportunity for the publisher to protest an adverse determination, and a disinterested party review of the original decision to exclude the publication. (Mag. Rep. & Rec. at 31.) The magistrate judge recommended declaratory and injunctive relief in favor of Montcalm. The defendants have objected to the magistrate judge's due process analysis, which would require them to notify a publisher every time it rejects a publication. The defendants further object to an award of declaratory or injunctive relief on the grounds that it would serve no practical purpose since Montcalm has actual notice that its publications were withheld. After close review of the issue, this court finds that the VDOC provides sufficient procedural safeguards to publishers, such as Montcalm, that circulate materials to a general audience.

■■■ When a prison withholds inmate mail, it must provide minimum procedural safeguards to protect the First Amendment liberty interest of prisoners and their correspondents. *Procunier v. Martinez*, 416 U.S. 396, 417–18, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1973), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). In *Procunier v. Martinez*, the Supreme Court affirmed a district court's judgment that a prison must notify an inmate of "the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disap-

proved the correspondence." *Id.* That decision determines the procedural safeguards necessary in the instance of personal correspondence, however, not widely-distributed publications aimed towards a general audience. Publishers, indeed, have a First Amendment interest in communicating with prisoners who seek their point of view through subscriptions. *Thornburgh v. Abbott*, 490 U.S. at 408, 109 S.Ct. at 1879. However, that interest is lesser than the interest held by authors of personal correspondence.[10] Thus, the procedural safeguards required in the context of withholding *Gallery* from an inmate need not be identical to those required when a letter written by an inmate or addressed to him is withheld. The Supreme Court has not articulated the procedural safeguards necessary to protect a publisher's First Amendment interest when its publication is withheld from a prison. Neither has the Fourth Circuit addressed the issue. As such, this question is one of first impression for the court.

■■■ When determining the amount and nature of procedural safeguards required, a court should consider the following factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Due process is not a technical concept, however,

---

9. According to DOP 852, the VDOC must provide notification to an inmate whose publication will not be delivered. The inmate may then appeal the decision through the Inmate Grievance Procedure. The publisher is not notified, however. *See supra* note 3. The magistrate judge concluded that these procedures adequately protect the interests of subscriber inmates such as Hodges and Flora. (Mag.Rep. & Rec. at 25.) This court agrees and will not address that issue further.

10. First Amendment interests exist in different magnitudes. For example, the interest implicated in sending or receiving a personal letter is greater than the interest implicated in sending or receiving a generalized publication, which in turn is greater than the interest implicated in sending or receiving bulk mailings. *See Jones v. North Carolina Prisoner's Union*, 433 U.S. 119, 130–31, 97 S.Ct. 2532, 2540, 53 L.Ed.2d 629 (1977) (stating that "First Amendment speech rights are barely implicated" when bulk mailings are restricted from a prison).

wholly unrelated to the unique time, place and circumstances involved: "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334, 96 S.Ct. at 896 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

At stake here is Montcalm's First Amendment interest in communicating with Hodges and Flora through its publication, *Gallery.* As recognized above, Montcalm possesses such an interest, which is theoretically infringed when its publication is not delivered to subscribing inmates. Because *Gallery* is aimed towards a general audience, however, Montcalm's interest in communicating specifically with Hodges and Flora is attenuated. The implication of Montcalm's interest is further diminished by the fact that, according to DOP 852, Hodges and Flora may request that withheld publications, such as *Gallery,* be sent elsewhere—perhaps to a friend, family member, or other location where the publications may be stored until these inmates are released from prison. In such a scenario, Montcalm's communication with Hodges and Flora is not prevented, but only delayed. Montcalm has no special interest in immediate communication with Hodges and Flora. *See Gregory v. Auger,* 768 F.2d 287, 291 (8th Cir.1985) (finding that a chamber of commerce had no "particularized interest" of being notified that its mailings were temporarily withheld from an inmate), *cert. denied,* 474 U.S. 1035, 106 S.Ct. 601, 88 L.Ed.2d 580 (1985).

The court must next consider whether DOP 852 poses an undue risk of erroneously depriving Montcalm and other publishers of their First Amendment interests and whether additional or alternative procedures would provide more valuable safeguards. The VDOC's current procedural mechanism provides a subscriber inmate notice and an opportunity to challenge PRC's decision to withhold a publication. Providing the publisher these same procedures, notice and an opportunity to challenge, would surely safeguard any of its First Amendment interests that are implicated. However, the question is whether the additional procedures would provide a necessary safeguard that is now absent or whether they would merely duplicate the safeguards already provided through the subscriber inmate. Since the First Amendment interests of both inmate and publisher are implicated through one act of correspondence, a challenge by the subscriber inmate to a decision withholding that correspondence would also address the interests of the publisher.[11] In essence, a subscriber inmate has the means to protect both his own First Amendment interests and those of a publisher when he challenges the PRC's decision.[12] It also seems appropriate that the subscriber inmate be the party to challenge the PRC's decision because the publisher's right to communicate with an inmate can be no greater than the inmate's right to receive that communication.

The last factor for consideration is the government's interest. Requiring the VDOC to notify a publisher every time it withholds a publication from an inmate would be an onerous burden. Although the magistrate judge recommended that the publisher be sent only a copy of the notification given to

---

**11.** Although a subscriber inmate has no access to the suspect publication when he challenges the prison's decision to withhold it, this fact, alone, fails to show that he cannot adequately protect both his own and the publisher's First Amendment interests. If a subscriber inmate wishes to mount a serious challenge to a prison's withholding decision, he could request that the publication be sent to a family member or friend who could then assist him. Furthermore, nothing prevents the subscriber inmate from notifying and enlisting the help of the publisher as he challenges the decision to withhold its publication.

**12.** The ability of one party to raise, and thus protect, the rights of another party has long been accepted in contexts where the first party is in a better position to act. For example, criminal juries cannot be selected on racial grounds because it violates the Fourteenth Amendment rights of potential jurors and criminal defendants. *Akins v. Texas,* 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945); *Batson v. Kentucky,* 476 U.S. 79, 87, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69 (1986). Although a criminal defendant has no right to a jury of the same race, he may challenge the selection of a jury as discriminatory. *Akins v. Texas,* 325 U.S. at 403, 65 S.Ct. at 1279. Thus, the criminal defendant protects both his own right to a fairly chosen jury and the rights of prospective jurors to participate in jury service without discriminatory exclusion.

the inmate, this, in itself, requires the VDOC to allocate significantly more money and labor to the regulation of prisoner mail. At a minimum, it would result in additional postage and copying costs and in more employee time spent compiling publisher's addresses, copying notification letters, and addressing envelopes. The VDOC would incur even further expense when providing the publisher an opportunity to challenge the PRC's decision and allowing for disinterested review. At a time when resources are scarce, these additional procedures would significantly burden the VDOC.

After considering the relevant factors, this court finds that the First Amendment interests of Montcalm, and similar publishers, are adequately protected by the procedures outlined in DOP 852. The ability of Hodges and Flora, and other subscriber inmates, to challenge any decision to withhold a publication from them safeguards the First Amendment interests of both the subscriber inmates and the publishers. The additional procedural safeguards outlined by the magistrate judge would duplicate process and substantially increase administrative and fiscal burdens for the VDOC. In sum, the value of the extra procedures fails to justify the onerous burden they would create. The Constitution does not require them.

### IV.

Accordingly, the court will adopt the magistrate judge's report and recommendation in part and modify it in part as set forth above.

### FINAL ORDER

For the reasons stated in the Memorandum Opinion entered on this date, it is **ORDERED** and **ADJUDGED** that judgment be and the same hereby is entered in favor of defendants, the Commonwealth of Virginia, R.J. Beck, J. Horton, R.A. Young, E.C. Morris, Ms. Summers, M. Beck, J. Phippin, Edward W. Murray, and John Does 1–7, and against plaintiffs, Donald A. Hodges, Michael G. Flora, and Montcalm Publishing Corporation.

Plaintiffs are advised that they may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within thirty (30) days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).