**MONTCALM PUBLISHING CORPORATION, Plaintiff–Appellant,**

and

**Donald Arlis Hodges; Michael Glynn Flora, Plaintiffs,**

v.

**R.J. BECK; J. Horton; R.A. Young; E.C. Morris; Ms. Summers; Edward Murray, in his official capacity as Director of the Department of Corrections of the Commonwealth of Virginia; John Doe, 1—7, in their official capacities such fictitious names being designated to identify those VDOC employees whose true identities are now unknown to plaintiff-intervenor, but who serve as (a) members of the VDOC Publication Review Committee,**

**(2) Warden or Superintendent of Keen Mountain Correctional Center (KMCC), and (3) functional KMCC mailroom censor; J. Phippin; Mr. Beck; Commonwealth of Virginia, Defendants–Appellees.**

No. 95–6190.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 8, 1995.

Decided April 2, 1996.

**ARGUED:** Keith S. Orenstein, Orenstein & Orenstein, P.C., New York City, for Appellant. Mark Ralph Davis, Assistant Attorney General, Criminal Law Division, Office of the Attorney General, Richmond, Virginia, for Appellees. **ON BRIEF:** James S. Gilmore, III, Attorney General, Mary E. Shea, Assistant Attorney General, Criminal Law Division, Office of the Attorney General, Richmond, Virginia, for Appellees.

Before ERVIN and MOTZ, Circuit Judges, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Reversed by published opinion. Judge ERVIN wrote the opinion, in which Judge MOTZ and Senior Judge WILLIAMS joined.

## OPINION

ERVIN, Circuit Judge:

A Virginia Department of Corrections ("VDOC") Operating Procedure allows prison authorities to deny inmates access to obscene publications. A publisher of disapproved magazines appeals the district court's ruling that the policy is constitutional in spite of its failure to provide for notice to such publishers. We hold that publishers are entitled to notice and an opportunity to be heard when their publications are disapproved for receipt by inmate subscribers. Accordingly, we reverse the judgment of the district court.

### I.

VDOC Department Operating Procedure ("DOP") 852 allows prison officials to deny inmates access to certain written publications, including those deemed obscene. The rule establishes a procedure by which the warden or superintendent approves or disapproves publications "on a case-by-case and/or issue-by-issue" basis. The warden or his designee reviews all publications received at the jail and all inmate requests for publications to determine whether they are permissible. If the warden deems them disallowed, he must make a written record, inform the inmate of the decision, and inform the inmate of the right to appeal. A Publication Review Committee reviews denials "to ensure department-wide consistency in those publications disapproved for entry into facilities," and a list of all disapproved publications is circulated to all prisons.

The policy specifically defines obscenity:

1. The publication depicts or describes sexual conduct in such a way to include, either:

   a. Representation or descriptions of actual sexual intercourse, normal or perverted, anal or oral; or,

   b. Representations or descriptions of excretion in the context of sexual activity; and

2. A reasonable person viewing the depiction or representation would find that the material taken as a whole appeals to a prurient interest in sex.

A publication may also be disapproved on the grounds that it has not been received in accordance with procedure; its content "may be detrimental to the security, good order or discipline of the institution"; or it contains instructions on manufacturing weapons or drugs, violence or terrorist activities, defeat-

ing security devices, or physically disabling another person.

Appellant Montcalm Publishing Corporation publishes *Gallery,* a monthly magazine that includes *"inter alia* articles, fiction, commentary, photographic layouts of nude women, and paid advertisements." Montcalm claims that *Gallery* has never been deemed obscene in a court action to which Montcalm was a party.

Michael Flora and Donald Hodges, inmates at the Keen Mountain Correctional Center (KMCC), subscribed to *Gallery.* When VDOC notified them that they would not be allowed to receive the June and September 1992 issues, Hodges and Flora initiated pro se civil rights actions. Prison officials had based their decision to disapprove the magazines on some of the written content, not the nude photographs. Later, two previously approved issues were disapproved. Montcalm was permitted to intervene in the prisoners' action after learning of the suit by way of Flora's request for a refund of his subscription fee.

Magistrate Judge Cynthia Kinser held a hearing, and issued a Report–Recommendation. She recommended that judgment be entered in favor of the defendants, except as to Montcalm's procedural due process claim. She found that, although the regulation adequately safeguarded inmates' procedural due process rights, the same was not true as to publishers, who "have no way of knowing when their publications have been banned from the prisons." Magistrate Judge Kinser found that providing procedural protection to publishers of disapproved publications would impose a minimal burden on prison authorities. Moreover, to the VDOC's argument that granting injunctive or declaratory relief to Montcalm would be useless now that the publisher actually has notice that *Gallery* violates the regulation, Judge Kinser held that the policy in fact mandates case-by-case or issue-by-issue determinations, and that the prisons will review disapproved publications "again and again." She held that, at a minimum, the publisher must be given notice, the opportunity to protest, and review by a disinterested party.

The district court upheld the obscenity regulation, and determined that Montcalm was not entitled to notice and an opportunity to be heard. *Hodges v. Commonwealth of Virginia,* 871 F.Supp. 873 (W.D.Va.1994). The court first found that prison authorities' decisions to withhold inmate mail must provide minimum procedural safeguards in light of the First Amendment concerns of inmates and their correspondents. *Id.* at 878 (citing *Procunier v. Martinez,* 416 U.S. 396, 417–18, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974), *overruled on other grounds by Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)). The court distinguished the safeguards required in cases of personal mail from those dealing, as here, with magazines. *Id.* Analyzing the case under the factors specified in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the district court concluded that "the First Amendment interests of Montcalm, and similar publishers, are adequately protected by the procedures outlined in DOP 852." *Id.* at 879–80. The court noted that subscriber-inmates can challenge the decision to withhold a publication, which protects the First Amendment interests of the publisher, and concluded that "the value of the extra procedures fails to justify the onerous burden they would create." *Id.* at 880.

## II.

■ Issues of law are reviewed *de novo* on appeal. *Waters v. Gaston County, N.C.,* 57 F.3d 422, 425 (4th Cir.1995).

The Supreme Court has recognized that the First Amendment plays an important, albeit somewhat limited, role in the prison context. In *Procunier v. Martinez* the Court considered the proper standard of review for prison regulations that restrict inmates' freedom of speech. 416 U.S. 396, 406, 94 S.Ct. 1800, 1808, 40 L.Ed.2d 224 (1974). The Court specifically limited its consideration to regulations of "direct personal correspondence between inmates and those who have a particularized interest in communicating with them," *id.* at 408, 94 S.Ct. at 1809, as opposed to "mass mailings," for which "[d]ifferent considerations may come into play," *id.* at 408 n. 11, 94 S.Ct. at 1809 n. 11. The

Court found that censorship of inmate mail—whether the inmate writes or receives it—"works a consequential restriction on the First and Fourteenth Amendment rights of those who are not prisoners." *Id.* at 409, 94 S.Ct. at 1809. The Court held that censorship of prisoner mail is justified if, first, "the regulation or practice in question [ ] further[s] an important or substantial governmental interest unrelated to the suppression of expression." *Id.* at 413, 94 S.Ct. at 1811. Second, restrictions of First Amendment free speech must be "no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id. at 424, 94 S.Ct. at 1816* The *Martinez* Court further held that "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Id.* at 417, 94 S.Ct. at 1814. The Court upheld the district court's requirements of notice to the inmate, the opportunity for the letter's author (inmate or otherwise) to protest, and review by someone other than the initial decision-maker. *Id.* at 418–19, 94 S.Ct. at 1814.

The Supreme Court clarified the standard to be applied when addressing the constitutionality of prison rules in *Turner v. Safley.*[1] 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. at 2261. The decision specifically rejected the application of strict scrutiny, in deference to the judgments of prison administrators faced with difficult problems. *Id.* The Court articulated a number of factors to guide the review process: a "valid, rational connection" between the challenged regulation and the interest that justifies it; "whether there are alternative means of exercising the right that remain open to prison inmates"; how accommodation of the prisoners' right will affect prison staffing and resource allocation; and whether "ready alternatives" are available. *Id.* at 89–90, 107 S.Ct. at 2262 (quotations and citations omitted). The Court applied

these factors and upheld a Missouri prison regulation that prohibited correspondence between inmates in different prisons, finding it to be based on legitimate security concerns. *Id.* at 91, 107 S.Ct. at 2262–63.

■ In 1989 the Supreme Court held that the *Turner* reasonableness standard must be applied to regulations of publications. *Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989). At issue were federal regulations that allowed federal prisoners to subscribe to publications, but allowed prison authorities to reject publications deemed harmful to security, order, or discipline. *Id.* at 404, 109 S.Ct. at 1876–77. The regulations provided procedural protection, including notice and independent review. *Id.* at 406, 109 S.Ct. at 1878. The Court specifically limited *Martinez* to "regulations concerning outgoing correspondence," which the Court found to pose no significant danger *inside* the prison. *Id.* at 411–13, 109 S.Ct. at 1880–82. The Court also specifically overruled *Martinez* to the extent that it suggested a "distinction between incoming correspondence from prisoners ... and incoming correspondence from nonprisoners." *Id.* at 413–14, 109 S.Ct. at 1882.

The *Abbott* Court explicitly pointed out that the regulations at issue in that case established procedural protection, including providing the publisher or sender of rejected publications a copy of the rejection letter and allowing the publisher to obtain independent review of the decision. *Id.* at 406, 109 S.Ct. at 1878. Three lower courts have similarly held that those who send written communications to inmates are entitled to notice and an opportunity to be heard when those communications are censored or withheld. In *Martin v. Kelley,* the Sixth Circuit required that notice and an opportunity to protest be provided to the "author of [a] rejected letter," because the author's First Amendment interests are implicated by the rejection, and the author's assistance may be necessary for the inmate's efforts to challenge the decision.

---

1. *Turner* may have been superseded by the Religious Freedom Restoration Act, 42 U.S.C.A. §§ 2000bb to 2000bb–4—an issue we do not decide. Since no such religious interests are at stake here, the *Turner* reasonableness standard governs.

803 F.2d 236, 243–44 (6th Cir.1986). The Eighth Circuit reached a similar decision in *Trudeau v. Wyrick,* 713 F.2d 1360, 1366 (8th Cir.1983). Both of these cases dealt with personal letters, however, which aligns them more closely with *Martinez* than with the present case. *Cofone v. Manson,* 409 F.Supp. 1033 (D.Conn.1976), is a closer case. The court held that "the prisoner, himself, has the right to the publisher's aid in submitting written objections to the [l]ibrary [c]ommittees," since the publisher is familiar with the material. *Id.* at 1042. Appellees contend that *Cofone* is a questionable precedent, because the inmate-plaintiff may not have had standing to raise the issue of publisher notice.

The cases on which the district court relied in ruling that Montcalm was entitled to no procedural protection when its magazines are withheld do not resolve the question. First, the court cited *Jones v. North Carolina Prisoner's Union,* in which the Supreme Court held that a prohibition against bulk mailings by a prisoner's union was reasonable, given the availability of alternative means to share information. 433 U.S. 119, 130–31, 97 S.Ct. 2532, 2540–41, 53 L.Ed.2d 629 (1977) ("First Amendment speech rights are barely implicated in this case" because only bulk mailings were at issue, not "mail rights" themselves.). *Jones* does not control the outcome of this case for two reasons. First, this case does not concern bulk mailings, but rather the sending of publications to those who have specifically subscribed to them. Second, the *Jones* Court simply held that the prisoners' loss of the ability to save money by using bulk mail did not implicate the First Amendment. In this case, prisoners are completely precluded from receiving the publications to which they have subscribed.

The district court also relied on *Gregory v. Auger,* 768 F.2d 287 (8th Cir.), *cert. denied,* 474 U.S. 1035, 106 S.Ct. 601, 88 L.Ed.2d 580 (1985). The Eighth Circuit upheld an Iowa prison policy that restricted the mail privileges of inmates in disciplinary detention, and held that particular chambers of commerce which sent mail temporarily withheld

from an inmate were not entitled to notice. *Id.* at 291. The court found no indication "that the chambers of commerce had any particularized interest in being apprised of when [the inmate] received his mail." *Id.* The district court in the present case held that Montcalm similarly had "no special interest in immediate communication with Hodges and Flora." But *Gregory* also fails to resolve the precise issue before this court, because the mail at issue in that case was withheld only temporarily, whereas VDOC has permanently disallowed the *Gallery* magazines.

The Supreme Court has clearly recognized a First Amendment interest in those who wish to communicate with prison inmates, although it has expressly reserved the question of how that interest operates in the case of "mass mailings." We do not believe, however, that mass mailings are at issue. Although Montcalm mails *Gallery* to thousands of subscribers nationwide, this case involves only the relationship between Montcalm and particular inmate-subscribers.[2] Despite the First Amendment's somewhat limited reach in the prison context, it cannot fairly be said that Montcalm has no First Amendment interest at stake.

Having recognized that Montcalm indeed has a constitutional interest in communicating with its inmate-subscribers, we cannot conclude that it is entitled to no process at all when VDOC prevents the subscribers from receiving Montcalm's publications. An inmate who cannot even see the publication can hardly mount an effective challenge to the decision to withhold that publication, and while the inmate is free to notify the publisher and ask for help in challenging the prison authorities' decision, the publisher's First Amendment right must not depend on that.

At present, VDOC procedures require written notice to inmates when a publication is disapproved. We believe that providing a copy of this notice to publishers of disapproved publications and allowing the publishers to respond in writing would pose a minimal burden on corrections officials. We

---

**2.** In contrast, a publisher who wished to send a particular publication to each and every inmate at a given institution could be said to be undertaking a mass mailing.

note, however, that on remand the district court is free to fashion the remedy it deems most appropriate.

### III.

We reverse the decision of the district court denying all relief to Montcalm, and remand for a determination of the appropriate process to be provided to publishers of rejected publications.

*REVERSED AND REMANDED.*