**Kevin M. BALLANCE, Plaintiff,**

v.

**Commonwealth of VIRGINIA, G. Deeds, Major Rowlette, Regional Director Young, Edward W. Murray, and Larry Taylor, Defendants.**

**No. CIV.A. 7:99–CV–00572.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Sept. 27, 2000.

---

Kevin Ballance, Big Stone Gap, VA, pro se.

Pamela Anne Sargent, Office Of The Attorney General, Richmond, VA, for Major Rowlette.

### MEMORANDUM OPINION

TURK, District Judge.

KEVIN M. BALLANCE, a Virginia inmate proceeding *pro se*, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Prior to this opinion, this Court dismissed the claims against all defendants except Major R.W. Rowlette ("Major Rowlette"). With respect to the remaining Defendant, Plaintiff alleges that Major Rowlette, an official of the Virginia Department of Corrections ("VDOC"), violated his constitutional rights by wrongfully confiscating photographs of children from his cell. As relief, he seeks an injunction directing that his materials be returned to him and that he be awarded punitive damages. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the matter comes before this Court on the Defendant's Motion for Summary Judgment and the Plaintiff's Motion for Summary Judgment. For the reasons stated below, the Defendant's Motion for Summary Judgment is Granted and the Plaintiff's Motion for Summary Judgment is denied.

### I. FACTUAL BACKGROUND

Kevin M. Ballance, the plaintiff, is an inmate under the supervision of the Virginia Department of Corrections and currently housed at Wallens Ridge State Prison. During the alleged constitutional violation in question, Ballance was confined at Red Onion State Prison ("ROSP"). The Defendant, R.W. Rowlette is a Corrections Major and the Chief of Security at ROSP.

On or about December, 1998, Ballance received a book and brochure through the mail entitled "The Moving Picture Boy." The book discussed the lives of many different actors, including children, and contained pictures of children. A brochure also accompanied the book. The parties, however, disagree as to what the brochure contained. Major Rowlette alleges that the brochure contained pictures of children with both frontal and backside nudity. As the Defendant never received the brochure, he simply argues that the contents of the brochure is unknown. Based on Ballance's convictions as a sex offender, Major Rowlette confiscated the book and brochure.

Ballance did not receive a notice of the confiscation of the book and brochure until January 4, 1999. Major Rowlette explained that he failed to provide Ballance with the notice of confiscation sooner merely because of an administrative oversight. The notice explained that the book and brochure had been disapproved because they violated DOP 852, which empowers the Warden or a designee to review and confiscate any mail containing nude depictions of children. Major Rowlette then forwarded "The Moving Picture Boy" book and brochure to the VDOC Internal Affairs for further investigation. During the investigation, the brochure became lost and was never recovered. Thus, the publication review committee only had an opportunity to review the book. On April 29, 1999, the committee approved the book and ordered it returned to Ballance.

Due to the nature of the alleged child nudity in the confiscated book and brochure, Major Rowlette directed two security staff to search Ballance's cell for similar material. On December 2, 1998, the Officers discovered approximately 406 photographs of children in Ballance's cell. Some of the pictures included children in their undergarments, while some were of children with bare chests. Ballance claims that the pictures are of his family. Pursuant to DOP 856, which prohibits partially nude personal photographs, Major Rowlette confiscated the pictures and immediately provided Ballance with a copy of the

notice of confiscation of property. The officers also confiscated some of Ballance's cellmate's pictures, which were subsequently returned after review.

In response to the confiscation of the photographs, Ballance filed a Red Onion State Prison Request for Services/Information Form on December 2, 1998, inquiring about why Major Rowlette directed the officers to take Ballance's pictures without provocation and contrary to any prison regulation. On the same day as Mr. Ballance's request for information, Major Rowlette provided him with a notification of confiscation relating to the 406 photographs of children. Ballance followed this notification with an inmate grievance form received in the Warden's Office on December 7, 1998. On December 9, 1998, Ballance filed a Red Onion State Prison Request for Complaint form Major Rowlette's comments about the video guide that Ballance had not yet received. On December 31, 1998, he filed an inmate grievance form relating to the confiscation of the original book and brochure.

Major Rowlette sent Ballance a memorandum on January 4, 1999, which explained his disapproval of the book "The Moving Picture Boy & Brochure" and that it was being forwarded to the Publication Review Committee. In response, Ballance again filed an inmate grievance form on January 8, 1999 complaining that Rowlette's confiscation of the book and the Warden/Superintendent's review of the book violates Ballance's rights. On January 12, 1998, the Staff Grievance Coordinator sent Ballance a memorandum requesting an extension of time to conduct an adequate investigation regarding the pictures of children in Ballance's cell. Ballance did not agree with the extension of time. Due to Ballance's rejection of the extension, his grievance materials were returned to him so that he could forward his grievance to the next level of prison procedure.

In response to Ballance's grievances, the Warden sent Ballance a Level I response form on February 17, 1999, which determined the grievances unfounded. Ballance appealed the Warden's decision, however, the Regional Director sent Ballance a Level II response form affirming the Warden's evaluation. Further, the Western Regional Director informed Ballance that Level II is the last level of appeal for his grievance.

## II. ANALYSIS

Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Instead, the non-moving party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed.R.Civ.P. 56(e). If the non-moving party fails to show a genuine issue of fact, summary judgment, if appropriate, may be entered against the non-moving party.

The Plaintiff asserts that the Defendant violated his constitutional rights, specifically the First and Fourth Amendment, by confiscating four hundred and six (406) photographs of "his children" from his cell. Ballance asserts that under the First

Amendment, he has a right to own and view the confiscated photographs. Under the Fourth Amendment, the Plaintiff argues that Major Rowlette unlawfully searched Ballance's cell and sequestered the photographs.

The Supreme Court established that neither the barbed wire nor the cement walls of confinement completely sever an inmate's Constitutional rights. *See Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Although housed behind steel and stone, no "iron curtain" separates an inmate from his "Constitutional rights." *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Prisoners are afforded those rights not "inconsistent with imprisonment itself or incompatible with the objectives of incarceration." *Hudson v. Palmer,* 468 U.S. 517, 523, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Limitations on these rights, however, arise from the realistic demands of prison enforcement and from "valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citing *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)). The Supreme Court recognized that the difficulties and complications of prison control as well as issues of separation of powers demand that courts follow a policy of "judicial restraint." *Turner v. Safley,* 482 U.S. 78, 85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

### A. First Amendment

An inmate specifically retains those Constitutional rights afforded to him by the First Amendment. *See Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800 (1974); *See also Ross v. Reed,* 719 F.2d 689, 693 (4th Cir.1983). In the prison context, however, an inmate's First Amendment rights must often bow to other valid penological concerns. *See Montcalm Publishing Corp. v. Beck,* 80 F.3d 105, 107 (1996) (citing *Procunier v. Martinez,* 416 U.S. 396, 417–18, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by *Thornburgh v. Abbott,* 490 U.S. 401, 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)). Any regulation of speech, however, must not be any more encompassing than necessary to further the penological interested involved. *See Montcalm Publishing Corp.,* 80 F.3d at 108 (citing *Martinez,* 416 U.S. at 424, 94 S.Ct. 1800). The Supreme Court held that when a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (citing *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)).

This Court is aware of the special circumstances that arise in the confines of prisons. Not only should this Court allow great deference in the formation of prisons regulations, but more importantly, the judgment of prison officials also demand great weight. To determine whether Major Rowlette violated Ballance's Constitutional rights, this Court must first ascertain whether Major Rowlette's confiscation of Ballance's photographs was "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). This deferential standard of review ensures that " 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.' " *Id.* (quoting *Jones,* 433 U.S. at 128, 97 S.Ct. 2532). Courts must give prison officials, like Major Rowlette, great deference in executing policies and using tenured judgment to preserve order and maintain secu-

rity. *See Bell,* 441 U.S. at 547, 99 S.Ct. 1861 (citations excluded).

After intercepting Ballance's mail order for "The Moving Picture Boy" book and brochure, which allegedly contained photographs of nude children, Major Rowlette used his judgment as chief security guard at Red Onion State Prison and ordered Ballance's cell searched. Although there exists some dispute as to whether the brochure contained nudity, under the totality of circumstance, this Court will not undermine the seasoned judgment of Major Rowlette.[1] Ballance presented no evidence which leads this Court to believe that Major Rowlette searched his cell out of harassment.

██ The Supreme Court established that when a prison official withholds or censors mail, "minimum procedural safeguards" must exist to protect the inmate's Constitutional rights. *See Martinez,* 416 U.S. at 417, 94 S.Ct. 1800. In *Martinez,* the prison restricted certain types of mail that an inmate may receive. Although the case at bar involves the confiscation of photographs, not the restriction of mail, this Court believes Ballance must also receive procedural safeguards. The Fourth Circuit, following the *Martinez* court, reaffirmed the requirements of notice of confiscation, avenues for protest, and review of the alleged Constitutional violation by someone not involved with the initial decision. *See Montcalm Publishing Corp.,* 80 F.3d at 108 (citing *Martinez,* 416 U.S. at 418–19, 94 S.Ct. 1800).

In the case at bar, ROSP afforded Ballance all of these procedural safeguards. Ballance received notice of the confiscation the very day the Major Rowlette ordered the cell searched. The prison has certain procedures established for an inmate to appeal an action taken by either the administration or a prison official. Ballance quickly took advantage of his rights and filed several grievances. Moreover, the Warden of Red Onion State Prison gave Ballance a Level I review, but affirmed Major Rowlette's decision. Ballance appealed further and acquired the Regional Director's Level II review, who also denied Ballance relief based on the evidence. Clearly, the administration established set procedures for grievances, and Ballance utilized these avenues of appeal.

██ Ballance argues that allowing Major Rowlette to base his decision to confiscate the photographs of children would "punish inmates on the grounds of there [sic] conviction...." Major Rowlette does not contradict the evidence that he confiscated the items "to prevent further pedophilic behavior." Major Rowlette's decision, however, does not violate any cognizable right. In *Trapnell v. Riggsby,* a court upheld a federal prison regulation in light of the general assaultive background of that particular prison's inmates. 622 F.2d 290, 293 (7th Cir.1980). Similarly, in *Bullock v. McGinnis,* a prison official confiscated an inmate's mail due to a "lewd" photograph of Bullock's female correspondent. 14 F.3d 604, No. 92–2860, 1993 WL 533325, at *4 (7th Cir.Dec.21, 1993). The Defendant argued that he confiscated the photographs to ensure prison security and because of the inmate's "convictions of deviate sexual assault and aggravated kidnaping." *Id.* The court upheld the regulation and the prison official's judgment in light of all the circumstances. *Id.*

This Court is faced with a very similar situation. Ballance is a convicted pedophile. On August 23, 1993, Ballance was convicted of seven counts of aggravated sexual battery, six counts of forcible sodomy, two counts of indecent liberties, and

---

1. The factual dispute that arises relating to the brochure does not have a bearing on Ballance's allegation that the confiscation of his photographs violated his First Amendment rights. Thus, although such a dispute may often affect the disposition of a summary judgment motion, in this case, the disputed fact is immaterial to Ballance's First Amendment claim.

one count of kidnaping/abduction. Major Rowlette was aware of Ballance's convictions. Prison regulations allow inmates to receive photographs. Pursuant to DOP 856, however, the prison does not permit inmates to have nude or partially nude photographs. Major Rowlette explained that the four hundred and six pictures (406) were confiscated because "some of the pictures included children in their underwear, and others were of children with bare chests." In fact, Ballance agrees that several of the pictures contain children with bare chests, and that at least one photograph was of a child in the bathtub. Further, some of the pictures did include children covered only by their underwear. These facts are undisputed.

The court is mindful, however, that the nude or partially nude photographs only consist of a small percentage of the total number of pictures. As in *Bullock*, Major Rowlette took the pictures based both on the content and on the inmate's conviction. In fact, the inmate in that case and Ballance were both convicted of a form of sexual assault and kidnaping. Under the facts of this case, Major Rowlette explained that "prison officials have a duty to prevent material such as this from remaining in the possession of a convicted pedophile." Due to Ballance's convictions and the prison's interest in rehabilitating this disease, the nude and partially nude pictures mixed with other children's pictures render all four hundred and six pictures of children contraband.[2] Thus, the confiscation of the children's photographs serves to further the prison's interest in rehabilitation and is Constitutional under the circumstances of this case. *See Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).

This Court also recognizes the importance of institutional security. In addition to a specific prisoner's rehabilitation, a prison must maintain internal security. To further security measures, prisons may often infringe upon an inmate's Constitutional rights. *See Montcalm Publishing v. Beck*, 80 F.3d 105, 108 (1996) (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). In the context of an institutional prison, even minor disturbances may erupt into a dangerous and potential volatile situations. The presence of four hundred and six pictures of only children could provide the deadly spark needed to create a prison wildfire. If other inmates learned that a pedophile had such a large number of childrens' pictures in his cell, the potential for a disturbance is quite great. In fact, such a discovery could even endanger Ballance's physical well-being. Prison officials have a duty to protect both the security of the prison and the security of each prisoner. This Court holds that Major Rowlette's seasoned decision to confiscate the pictures was reasonable in light of the circumstances and furthered the prison's penological interests of rehabilitation and security. *See id.* Therefore, the confiscation of the photographs did not violate Ballance's First Amendment rights and Major Rowlette is entitled to judgment as a matter of law.

### B. Fourth Amendment

■ Ballance alleges that Major Rowlette searched his cell and confiscated the photographs with the purpose of harassing him. Although unclear from Plaintiff's complaint, it appears Ballance avers that Major Rowlette also violated his Fourth Amendment rights to be free from unreasonable searches and seizures. Ballance alleges that Major Rowlette unreasonably

---

**2.** Although only several photographs violated DOP 856 pertaining to nude or partially nude photographs, this Court rules that a confiscation of all the photographs does not violate Ballance's Constitutional rights in light of Ballance's conviction as a pedophile, the prison's interests of maintaining security and prisoner rehabilitation. However, this Court does not maintain that in all cases the existence of contraband with non-contraband will automatically taint all the inmate's property and allow prison officials the power to confiscate the property in violation of the inmate's Constitutional rights.

searched his cell and confiscated the photographs. The Supreme Court of the United States, however, does not afford a prisoner this Fourth Amendment right. *See Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Under the Fourth Amendment of the United States Constitution, a prisoner has no cognizable expectation of privacy in his cell. *See id.* Such a right would run contrary to the penological interests of the prison. *See id.*

The Supreme Court in *Hudson* specifically addressed the possibility of harassment in its decision. Importantly, the Court rejected the Appeals Court analysis and held that prison officials do not have to have reasonable suspicion or an established policy to perform random searches of inmates' cells. *See id.* at 528–29, 104 S.Ct. 3194. Major Rowlette searched Ballance's cell in response to Ballance's receiving a questionable book and brochure in the mail. Accordingly, Ballance had no expectation of privacy in his cell, and his Fourth Amendment claim is without merit. Assuming *arguendo* that Ballance had an expectation of privacy in his cell, this Court still holds that Major Rowlette acquired reasonable suspicion to search the cell after receiving the book and brochure, and therefore, Major Rowlette did not violate Ballance's Fourth Amendment rights.

■■ Ballance also argues that Major Rowlette searched the cell out of racial discrimination. Allegations of racial discrimination are actionable under § 1983. *Henry v. Van Cleve*, 469 F.2d 687 (5th Cir.1972). However, merely conclusory allegations of discrimination are insufficient to state a claim. *Chapman v. Reynolds*, 378 F.Supp. 1137 (W.D.Va.1974). If inmates allege facts establishing that "discriminatory purpose [is] a motivating factor" in the challenged, official decision, then officials must prove "that the same decision would have resulted even had the impermissible purpose not been considered." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*,

429 U.S. 252, 270 n. 21, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Statistics of racial disparity may support a race discrimination claim only if such statistics present a "clear pattern, unexplainable on grounds other than race." *Id.* A few unrebutted incidents of apparent discrimination simply do not provide sufficient basis from which a court may infer a racially discriminatory intent. *Knop v. Johnson*, 667 F.Supp. 467, 501 (W.D.Mich.1987). "A claim of racial discrimination is a grievous charge, which certainly can rise to constitutional dimensions; but absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated." *Chapman, supra*, at 1140.

■ Ballance fails to offer any evidence to support his meritless contentions. Ballance contends that Major Rowlette's description of the pictures as including "children of many races and ages" somehow denotes a racist motivation. Ballance concludes that Major Rowlette searched his cell due to hatred and racism because Ballance "breeded [sic] outside of his race." Although Ballance makes several accusations, none of them find support in the facts at hand. Major Rowlette provided the Court with an objective description of the photographs, not a racist comment charged with discrimination and hatred. This Court will not undermine Major Rowlette's weathered judgment based on mere allegations of racial motivation.

## III. CONCLUSION

For the foregoing reasons and pursuant to Federal Rule of Civil Procedure 56, Major Rowlette's Motion for Summary Judgment is granted and Kevin Ballance's Motion for Summary Judgment is denied.

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

## *ORDER*

In accordance with the written memorandum opinion entered this day, it is hereby

### ADJUDGED AND ORDERED

(1) that Plaintiff's Motion for Summary Judgment shall be and hereby is **DENIED**; and

(2) that Defendant's Motion for Summary Judgment shall be and hereby is **GRANTED** to all remaining claims.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this order and the accompanying memorandum opinion to the plaintiff and to counsel of record for the defendants.